# Henderson *v.* The State.

*Indictment for Assault with Intent to Murder.*

1. *Subsequent declarations; when admissible to show malice.*—Under an indictment for an assault with intent to murder, the defendant's declarations to the person assaulted, made "about six minutes after the difficulty," threatening to kill him if he did not "keep his distance," cursing him, and forbidding him to stop at a house in the neighborhood, where he wished to stop for the purpose of having his wounds dressed, and where the defendant had already stopped, are competent evidence for the prosecution, being relevant to the question of malice and hostile feeling.

2. *Prior threats; admissibility of, as showing malice.*—Threats made by the defendant against the person assaulted, "about two weeks before the difficulty between them," are admissible as showing malice, and as declaratory of his criminal intention.

3. *Impeaching witness by proof of former declarations.*—When a witness is examined, with a view to impeaching him, as to his statements at a time and place designated, and he denies that he made such statements in the words or form suggested, he has a right to state, either on his direct or cross-examination, what he did say on that occasion.

From the Circuit Court of Randolph.

Tried before the Hon. James E. Cobb.

The indictment in this case was found in February, 1880, and charged that the defendant, Thomas J. Henderson, "unlawfully and with malice aforethought did assault Christopher C. Liles, with the intent to murder him." On the trial, the defendant having pleaded not guilty, a bill of exceptions was reserved by him, in which the matters presented to this court for consideration are thus stated, in substance: C. C. Liles, the person assaulted, was introduced as a witness for the State, and thus testified: "On the 28th August, 1879, witness was at the house of Mrs. Collins, in said county, and was sitting in the piazza, when the defendant came to the house, and walked in, passing near to him, and went into the house, and had a brief conversation with Mrs. Collins. Defendant did not speak to witness as he came in, but when he started out again, and got near the steps of the piazza as he went out, witness told him that he wanted to talk to him; and defendant then stopped, and said, *that he did not want any talk with witness—that witness was a liar, and had slandered his wife;* and used other insulting language to witness, and inflicted four wounds upon him, three of which were dangerous. Witness succeeded in drawing his pistol, and knocked the defendant out of the piazza; and

[Henderson v. The State.]

the combat then ceased, the defendant running off. Immediately afterwards, witness left the residence of Mrs. Collins, and got on his horse, and went in the direction of Mrs. Moore's house, the blood flowing profusely from the wounds inflicted by the defendant. Soon after leaving the residence of Mrs. Collins, witness intercepted the defendant, who then said, *that witness must keep his distance, and that he would kill him if he did not.*" The defendant objected to this statement being allowed to go to the jury as evidence, and reserved an exception to its admission.

The witness further testified: "Defendant went to the residence of Mrs. Moore, which is about one-quarter of a mile from the house of Mrs. Collins, and witness arrived at the house soon afterwards. When witness got to the house, his wounds were bleeding, and he wanted to stop there; but defendant told him to *go on, God damn him, and that he should not stop there.* Witness, saying that he wanted to send for a physician, went on to the residence of William Nicks, and stopped there, considerably weakened from the loss of blood, his wounds continuing to bleed all the way from the residence of Mrs. Collins. It was about six minutes from the time of the cutting to the time the defendant prevented witness from stopping at Mrs. Moore's house." The defendant objected to the italicized portion of this evidence, as to his declarations to the witness, being allowed to go to the jury as evidence, and reserved an exception to its admission.

"For the purpose of laying a predicate to prove contradictory statements of said witness, defendant asked him, on cross-examination, if he did not tell Green B. Knight, at said Knight's shop in Clay county, three months after he was cut by defendant, that he snapped his pistol at the defendant in the fight between them, and that the defendant would not have cut him if the pistol had not failed to go off. Witness replied, that he did not make such statements to said Knight; and he endeavored to state what he did say, but was stopped by the defendant. The solicitor for the State then asked said witness to state what he did say to said Knight, at the time and place mentioned; and he replied, that he told said Knight, at said time and place mentioned, that he snapped his pistol twice at defendant's breast, after the defendant had cut him twice." The defendant objected to this question, but not to the answer; and the record does not show that he reserved an exception to the overruling of his objection.

"The State introduced J. J. Liles as a witness, who testified, that the defendant and said C. C. Liles were at Christiana church about two weeks before the said difficulty between them, when the defendant came to said Liles, and pulled his arm, and told

[Henderson v. The State.]

him that he had been talking about his (defendant's) wife; that Liles said he had not; and that defendant then put his finger on his forehead, and said, *I will put a bullet right there;* and further, *I will see you again, you may look out,* and then left." The defendant objected to the admission of this evidence, and duly excepted to the overruling of his objection.

PARSONS & PARSONS, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—The declarations of the defendant, as testified to by the witness, C. C. Liles, were admissible in evidence, under the authority of *McManus v. The State*, 36 Ala. 285. They were uttered within six minutes from the time of the difficulty, and tended to show the hostile or unfriendly state of feeling on the part of the accused towards Liles, whom he had so recently assaulted and seriously wounded with a knife. It was for the jury to judge of the extent of the antecedent malice, from the character of the menacing declarations, and the circumstances under which they were uttered.

The threats made by defendant against Liles, previous to the attack upon him, were manifestly admissible, as evincing malice, and as being declarations of his criminal intention. Whart. Cr. Ev. § 756; Clark's Cr. Dig. § 375.

The court did not err in permitting the witness, Liles, to explain what he had said to Knight. The defendant had sought to lay the predicate for impeaching the witness, by asking him whether he had not made a certain statement to Knight, at a time and place which was designated; and he had denied making the statement, in the words or form suggested. It was clearly competent for him to state, either on the direct or cross-examination, what he did say at the time and place mentioned. The main purpose contemplated, in requiring a predicate thus to be laid, is to expressly afford the witness an opportunity to explain the supposed assertion, which it is intended to contradict.—1 Greenl. Ev. §§ 462-3; 3 Starkie's Ev. 1714; *Powell v. The State*, 19 Ala. 577.

We discover no error in the record, and the judgment is affirmed.