# Louisville & Nashville Railroad Co. v. Malone.

*Action against Railroad Company, for Damages caused by Sparks from Locomotive.*

1. *Fire caused by sparks escaping from engine; burden of proof as to negligence not shifted by mere "tendency" of evidence.*—Where a railroad company is sued for damages resulting from a fire alleged to have been caused by sparks escaping from an engine, in order to raise the presumption of negligence on the part of the defendant, so as to cast upon it the burden of proving suitable appliances and proper management of the engine, the jury must be satisfied, from the evidence, that the fire was the result of some affirmative act or omission on the part of the defendant, and this result does not follow, as a conclusion of law, from evidence which merely "tends" to show that the fire originated from sparks escaping from defendant's engine in unusual and dangerous quantities.

2. *Duty of jury as to believing or rejecting evidence.*—A jury is not required to believe all the evidence or reject all the evidence in any case, when it is conflicting, in order to arrive at a verdict.

[Louisville & Nashville Railroad Company v. Malone.]

3. *Misleading, argumentative, and abstract charges, and charges ignoring material conflicts in the evidence,* are properly refused.

4. *Making repairs subsequent to an injury; when not competent evidence of defect*—In an action against a railroad company to recover damages resulting from fire alleged to have been caused by the escape of sparks from an engine, the mere fact that the engine was subsequently repaired is not competent as evidence to show that its appliances were defective at the time of the fire.

5. *Statement by witness as to how his attention was called to the matter testified about; when not improper.*—In an action against a railroad company to recover damages resulting from a fire alleged to have been caused by the escape of fire from an engine, it is not error to permit a witness to state that another person called his attention to sparks flying from the engine.

6. *Testimony of expert; competency of evidence in rebuttal.*—Where, in an action against a railroad company to recover damages resulting from a fire alleged to have been caused by the escape of sparks from an engine, an expert witness for the defendant testified that the engines and spark arresters which had been in use by the defendant for more than a year before the fire were such that it was impossible for a fire to originate from sparks emitted from the engine, it was proper to permit the plaintiff to rebut this testimony by proof that, about a year before the fire, other fires in that neighborhood were set by sparks from engines on the defendant's road.

7. *Evidence of conversation part of which has been elicited by adverse party.*—Where the defendant, on cross-examination of a witness for the plaintiff, elicited a statement made to the witness by one H., it was proper to permit the plaintiff to call for all the conversation of said H. with the witness.


Appeal from the Circuit Court of Limestone.

Tried before the Hon. Thos. R. Roulhac.

The pleading in this case and the tendencies of the evidence are sufficiently stated in the opinion.

Gus Garner, a witness for the plaintiff, testified that, while he was with a man named Taylor, on the night plaintiff's house was burned, a freight train passed, the engine of which was throwing a great many sparks, and that there was an unusual and large rush of sparks from the engine. The witness was asked to state, "what was said between you and Taylor about it?" The defendant objected to this question on the grounds of irrelevancy, immateriality, and illegality. The court sustained the objection as to what Taylor said to the witness about the train throwing sparks, but allowed the witness to state the fact that Taylor called his attention to the sparks

[Louisville & Nashville Railroad Company v. Malone.]

from the engine; and to this ruling of the court the defendant excepted. Georgia Farrer, a witness for the plaintiff, having testified as to the circumstances of the burning of plaintiff's house, was asked by the plaintiff, "whether or not she had known of other fires in the neighborhood being set by passing engines on the defendant's road;" to which the defendant objected, because it called for evidence that was irrelevant, incompetent and illegal, because it did not show like engines to the one alleged to have caused the fire. The court overruled the objection, and the defendant excepted. Witness answered, "that she had; that a passing engine had once set fire at Charles Yarborough's." The court then asked the witness when this was, and how long it was before this time; to which she replied, "About one year before." Thereupon the court ruled that it was too remote, and excluded from the jury the testimony as to previous fires; but subsequently, when defendant's witness Wheeler had stated that the Louisville & Nashville Railroad Company had, for more than a year before this fire, used engines of like construction, and with like appliances to prevent the escape of fire, as the one that passed plaintiff's house on the occasion of this fire, and that it was impossible for engines of that construction and same appliances to set fire to anything along its track, the court then stated that it would "admit the testimony excluded, in contradiction of Wheeler's statement." And to this ruling of the court the defendant objected, on the grounds that such evidence was irrelevant, immaterial, and illegal, which objection was overruled, and defendant excepted.

In submitting the case to the jury, the court, at the request of the plaintiff, gave the following written charges, to the giving of each of which the defendant separately excepted: (1) "If you find that the locomotive, in passing the house of the plaintiff, threw out or emitted sparks and fire in unusual, extraordinary, or dangerous quantities, and thereby set fire to the house at a distance from the track of about 64 feet, and if you further find, from the evidence, that a properly constructed and operated engine could not or should not emit such burning sparks, and propel them for such a distance, you may find for the plaintiff, although the evidence of the fireman and the engineer was that the locomotive

and management was perfect and skillful.'' (2) ''The law is, gentlemen, when the plaintiff introduces evidence tending to show that the fire originated by sparks and fire emitted from the defendant's engine in unusual and dangerous quantities, then the burden is cast upon the defendant to show proper construction, appliances, and management of its engine; and, despite the fact that defendant introduces evidence of proper construction, appliances, and management of its engine, it still remains a question for the jury to determine, from all the evidence in the case, whether or not the fire did originate by the emission of fire and sparks from defendant's engine in unusual and dangerous quantities, and whether the construction and appliances and management of its engines were proper; and if you find that the fire did so originate, and that such construction, appliances, and management were improper, then you are authorized to find for the plaintiff.'' The defendant also separately excepted to the court's refusal to give the following written charges requested by it: (9) ''If the jury believe the evidence, they will find for the defendant.'' (10) ''If the jury believe the evidence, they will find for the defendant; if they do not believe the evidence, they will find for the defendant.'' (11) ''If you do not believe the evidence, gentlemen, you will find for the defendant.'' (13) ''The fact, if you believe it to be a fact, that fire was discovered soon after the passage of one of defendant's engines, raised no presumption that said fire was originated by sparks escaping from said engine.'' (14) ''I charge you, gentlemen, as matter of law, that the mere fact that the fire originated from sparks emitted from an engine is not sufficient to fasten a liability upon the railroad company.'' (15) ''Under the evidence in this case, I charge you, if sparks escaped from the smoke stack, the exhaust would have driven them upward; and, after their momentum had ceased, if the wind was blowing, they would have been blown, if they had left a perpendicular course, in the direction in which the wind was blowing. Therefore I charge you, if you believe, from the evidence, that at the time defendant's engine passed plaintiff's house the wind was blowing from the east, or southeast, said sparks could not have originated said fire, and your verdict, therefore, should be for the defendant.'' (16) ''Under the evidence in

[Louisville & Nashville Railroad Company v. Malone.]

this case, I charge you that the engine was properly handled and equipped; and, if you believe the evidence, your verdict should be for the defendant." (17) "If you believe, from the evidence, that the house of plaintiff was situated on the east side of the railroad, and that at the time of the passage of defendant's train the wind was blowing from the east or southeast, I charge you that it would have been a physical impossibility for the house to have caught fire from sparks escaping from defendant's engine; and for such burning, under these circumstances, the defendant would not be liable." (18) "Evidence that the engine was emitting sparks when it passed a point 200 yards north of the depot, and at the end of the switch track, and just at and beyond the brick yard, would not be evidence before you that it was emitting sparks when it passed Matilda Malone's." (19) "If the jury believe from the evidence, that engines Nos. 185 and 189 were inspected in New Decatur on November 5 and 6, 1894, respectively, before they left on their trip to Nashville, on the night of November 6, 1894, and found in good condition, presumption of law is that they remained in good condition during the trip." (20) "The taking out of the netting of engine 189, in December, 1894, or January, 1895, would have no effect upon the condition of the netting on November 6, 1894, nor would it tend to show that said netting was defective on November 6, 1894." (21) "The testimony of the engineer and fireman of engine 189 of the proper and careful handling of said engine is uncontradicted before you."

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as errors the rulings stated above and in the opinion.

THOS. G. JONES, for appellant.—The court erred in allowing the witness Garner to state that Taylor called his attention to sparks from the engine, etc. If what Taylor said was material on this point, Taylor should have been introduced and sworn. As it was, allowing Garner's statement of what Taylor told him was equivalent to giving the plaintiff the benefit of another witness as to the unusual rush of sparks, without calling that witness, swearing him, or giving the defendant the opportunity to cross-examine him.

The witness Georgia Farrer should not have been al-

lowed to testify as to her knowledge of other fires in the neighborhood being set by passing engines. The evidence was illegal in itself.—*Brady v. Metropolitan, R. R. Co.*, 127 N. Y. 51; *Boyce v. Cheshire R. R.*, 17 N. H. 97; *Hubbart v. R. R. Co.*, 39 Me. 506; *Moore v. City of Richmond*, 8 S..E. Rep. 388; *Piolet v. Simmons*, 106 Pa. St. 95; *Cleveland R. R. Co. v. Whisenant*, 114 Ind. 555; 1 Thompson on Negligence, 801; Whorton on Negligence, § 359. Evidence which is illegal in itself cannot be rendered legal or competent because it contradicts an expert opinion, Moreover, waiving the illegality, the fact does not contradict Wheeler's opinion, or lay a predicate therefor, and hence was inadmissible also on that ground. Wheeler's opinion was based on the predicate that the engine was "properly handled," &c.

The testimony of witnesses as to what Hogan said to them should not have been admitted.—*Marx v. Bell*, 48 Ala. 507; *Dozier v. Joyce*, 8 Port. 308.

The making of repairs or improving machinery is not evidence of negligence, and cannot be shown to prove negligence. *Lang v. Sanger*, 76 Wis. 75; *Baird v. Daly*, 68 N. Y. 547; *Moss v. Railway Co*. 30 Minn. 465; *Martin v. Tolle*, 59 N. H. 31; *Hudson v. Railroad Co.*, 59 Iowa, 581; *Terre Haute R. R. Co. v. Clem*, 123 Ind, 15.

W. T. SANDERS and McCLELLAN & McCLELLAN, *contra.*—It was proper to permit the witness Garner to state that Taylor called his attention to the escape of fire from the engine. This was part of the *res gestae.*— *Nelson v. Iverson*, 17 Ala. 216; *McLemore v. Pinkston*, 31 Ala. 266; 21 Am. & Eng. Encyc. of Law, 99; *Masterson v. Phinizy*, 56 Ala. 336.

Evidence of other fires is admissible in actions of this kind to show negligence.—*Gulf etc. R. Co. v. Holt*, 11 Am. & Eng. Ry. Cases, 72; *Koontz v. Oregon R. & N. Co.* (Ore.) 43 Am. & Eng. Ry. Cases, 11; 49 Am. & Eng. Ry. Cases, 669, and cases noted; *Henderson v. Philadelphia & Reading R. Co.*, 27 Am. St. Rep. 652.

Proof of the fact that property was destroyed or damaged by fire, having escaped from a passing engine, is *prima facie* evidence of negligence in the construction and management of such engine, and casts on the defendant the burden of rebutting the presumption.—*Louisville & Nashville R. Co. v. Reese*, 85 Ala. 495; 8 Am. &

Eng. Encyc. of Law, 5, 6 ; 7 Am. St. Rep. 660; and note.

COLEMAN, J.—The appellee, Matilda, Malone, brought this action to recover damages for the loss of her dwelling, which, according to the averments of the complaint, was set on fire, through the negligence and carelessness of the defendant, while operating its road. The theory of the plaintiff is that the house was set on fire by sparks escaping from the engine or smoke-stack as it passed the dwelling, and that the escape of the sparks was caused either by the improper handling of the engine, or that the appliances for arresting and suppressing the sparks were defective.

The defendant pleaded the general issue, and also a special plea, marked No. 2, in which it was sought to present the defense of contributory negligence. Upon motion of the plaintiff this plea was stricken from the file. The action of the court in striking the plea of contributory negligence from the file has not been assigned as error, and anything we might say as to its merits would be a mere dictum. The cause was tried upon the general issue. The proof showed that the house was situated about sixty-three feet from the center of the right of way or railroad track. If the fire was caused by sparks escaping from the locomotive, we think it can safely be asserted that the particular engine which caused the fire was identified. There was evidence tending to show that the dwelling was discovered to be on fire soon after the defendant's locomotive passed, that sparks of unusual size and in unusual quantities were seen to escape from the engine at points not far from the dwelling, that the fire originated in the roof of the dwelling ; and that there was evidence tending to show an absence of other causes calculated to originate the fire. The evidence for the defendant tended to show that an experienced and competent engineer had charge of the engine, that it was handled with care and skill, that the engine was in good condition, and that the appliances to prevent the escape of sparks were of approved patterns, and, if the engine was properly handled, it was impossible for the fire to have been caused by defendant's engine. It will be readily seen from this statement of the facts testified to that the jury alone were the arbiters of the conflicting evidence.

We are of opinion that the court erred in its statement of the law, contained in the first clause of charge No. 2 given at the request of the plaintiff, in the legal effect given to the word "tending." Charge 2 reads as follows: "The law is, gentlemen, when the plaintiff introduces evidence *tending* to show that the fire originated by sparks and fire emitted from the defendant's engine in unusual and dangerous quantities, then the burden is cast upon the defendant to show proper construction, appliances and management of the engine." The law is, that *if a fire is caused* by sparks emitting from an engine in unusual and dangerous quantities, *prima facie*, the cause is attributable to the negligence of the defendant, either in not having the engine handled with due care and skill, or else in not having proper appliances to arrest and suppress the sparks. Before this presumption of negligence can arise in any given case against the defendant, so as to cast upon it the burden of showing suitable appliances, and proper management of the engine, the jury should be reasonably satisfied, from the evidence, that the fire was the result of some affirmative act or omission on the part of the defendant. This result does not follow, as a conclusion of law, from evidence which merely "tends" to show that the fire originated by sparks. The conclusion in this part of the charge should have been predicated upon a finding by the jury of the existence of facts which raised the presumption of negligence, and thereby shifted the burden. The remainder of the charge, we think, correctly announces the law.

Jurors have the right and it is their duty to weigh the evidence in any cause in the light of their experience and observation, as to questions of fact common to such experience and observation, but it would be erroneous to instruct a jury that they were authorized to reject as untrue the statement of an expert simply because their observation and experience had not confirmed the statement. We are of opinion that it can be laid down as a sound proposition of law, in no wise dependent upon the experience and observation of jurors, as distinguished from common knowledge, that if fire is originated by the falling of sparks from an engine, at a distance of sixty-three feet, it is the result of negligence, arising either from improper management of the engine, or de-

fective appliances. Certainly the testimony of defendant's witnesses in this case as to the effect of suitable spark arresters upon sparks escaping from it, and a proper handling of the engine, admit of no other conclusion. The verdict in this case under the evidence adduced on the trial might have been rested upon the single issue as to whether the dwelling was destroyed by sparks escaping from the engine.

There was no error in refusing charges 9, 10 and 11. A jury is not required to believe all the evidence or reject all the evidence in any case, when it is conflicting, in order to arrive at a verdict. It is their duty and province to weigh all the evidence, and form their verdict according to the conviction produced in their minds from the whole evidence.

Charge 13 was properly refused. It is calculated to mislead, and it utterly ignores the evidence tending to show that sparks were escaping in unusual quantities and of a dangerous character at places in proximity to the dwelling.

Charge 14 was properly refused. It may be true as a proposition of law that the mere fact that a fire originated from sparks emitted from an engine does not show negligence, but such a charge is misleading, if not positively erroneous, in a case where the facts show that the fire originated sixty-three feet from the engine, and where there was evidence to show that the sparks were emitted in unusual and dangerous quantities, and the undisputed evidence is that an engine with suitable appliances and properly handled could not have possibly caused the fire.

Charges 15 and 17 were properly refused. First, they are argumentative. Second, there is no evidence to show that the railroad track ran due north and south. A dwelling could be on the east side of a road, and yet in line with the wind from a southeastwardly direction. There was also positive evidence that the sparks were blowing in such a direction as to come in contact with the house. What has heretofore been said is sufficient to show that charge 16 was properly refused.

Charges 18 and 19 need no comment. They are argumentative and do not assert correct propositions of law.

Charge 20, requested by the defendant, raises the question as to whether the making of repairs subsequent

to an injury or accident, of itself, is a fact which the jury can consider in determining that a defect caused the injury or accident. The authorities are not harmonious. In our opinion, if nothing can be shown except the fact of repairing, that fact is not competent to be considered by the jury. To hold that an act of repairing affords evidence tending to show that a previous injury was the result of a defect in the appliances would deter a prudent person from making repairs. The more prudent and solicitous a person is to guard against defects likely to cause injuries and accidents, the more certain he is to look after repairs before defects arise. That prudence which anticipates and provides against the happening of a cause calculated to result in injury is more commendable than that which withholds the repairing until after the cause arises. If there is any evidence tending to show that an injury was the result of a defect, and the repairs follow soon after, and the condition of the appliances at the time of the repairs is such as to throw any light upon its condition at the time of the accident, considered with or without the character of the repairs made, then the fact of repairing and the character of repairs made are all proper facts before the jury, to determine its conditition at the time of the injury or accident.

Charge 21 was properly refused. No witness testified in so many words that the engine was not properly handled, but there were facts in the case from which the jury might have inferred that there was a want of proper care and handling of the engine. The house, sixty-three feet from the track, was destroyed by fire. There was evidence tending to show it was set on fire by sparks from the engine. There was evidence tending to show that the engine and appliances were of such a character and condition as with proper handling the sparks could not have reached the house. If the jury was satisfied of the truth of these facts, then the fact of the fire from the sparks forces the conclusion that the engine was not properly handled,—notwithstanding the engineer and fireman swore to the contrary.

The other assignments of error relate to questions of evidence. We find no error in permitting the witness to state that his attention was called to flying sparks by Taylor. This is all that was permitted by the court.

[Louisville & Nashville Railroad Company v. Malone.]

The second and third assignments of error are not referred to in brief of counsel, and we presume are waived.

The witness Wheeler, on his examination by the defendant as an expert, testified that the engines and appliances for arresting and suppressing sparks were of such character that it was impossible for a fire to originate from sparks emitted from the engine, and that such engines and spark arresters had been is use for more than a year by the defendant. This expert witness was not required by any rule of law to go back further than the occurrence of the fire, nor to apply his evidence to any other engines than those which passed the dwelling just preceding the fire. If the defendant's counsel saw proper to elicit evidence as to all the engines in use by the defendant, and extending back over a period long before that of the injury, he thereby invited rebuttal evidence covering the entire period. We believe it to be a sound rule to meet expert evidence by proof of a fact which is inconsistent with the opinion of the expert. Such a fact when proven affects the weight of opinion evidence. The evidence showed that the engines were of like character. Upon this principle we hold the court did not err in admitting the evidence of the witness Georgia Farrar. If the objection had been based upon the ground that similar conditions did not exist, the objection would have been well taken. The witness testified that a fire could not originate under such conditions if the engine was "properly handled," but this precise objection was not pointed out to the court.

The remaining assignments of error relate to the testimony of witnesses as to what one Hagan said to them. On cross-examination the defendant had asked these witnesses as to statements made by them to Hagan, and the witnesses answered. When turned over to the plaintiff, these witnesses were told to state all the conversation, what Hagan had said to them relative to the same matter. It is now contended by appellant that the answer of the witnesses as to what they said to Hagan was permissible and relevant for the purpose of impeachment, and did not give the plaintiff the right to call for statements of Hagan. Whatever may have been the purpose of the defendant in making these inquiries of the witnesses, justice and fairness entitled them to place

before the jury all the circumstances under which they were made, and to have the conversations between them and Hagan which induced them. It may be that the light thrown upon their statements to Hagan by showing his questions and statements to them at the same time and in the same conversation explained other portions of their evidence, and also have caused the defendant to abandon the intention to impeach them. There was no error in this ruling of the court.

It follows that the judgment of the trial court must be reversed, and remanded.