The appellant (defendant in the court below) was indicted for murder in the second degree and convicted of manslaughter in the first degree, and sentenced to the penitentiary for one year and one day as punishment.
The evidence for the state tended to show that Jim Horton, the deceased, had accused the defendant of stealing some of his cotton, and had requested the defendant to pay for it; that on the morning of the killing deceased went to the home of the defendant, and when he got near the kitchen door he met Charlie Timmons; that Timmons went into the house and the defendant came out. Deceased and defendant walked to a cultivator in the edge of a cotton patch near the defendant's house, and stood there about 20 minutes in conversation. The deceased started away, and then turned back to the cultivator, and started off again from the cultivator when the defendant fired a .38-caliber pistol at him, and the deceased fired back at the defendant with a .32-caliber pistol, each firing at the other three shots. The deceased fell, one shot passing through his head and another striking him in the side, going through the body. From the wounds received death ensued. After the shooting Charlie Timmons, who was near the defendant during the shooting, caught and bridled the defendant's horse, and the defendant jumped on the horse and rode away. There was evidence that on several occasions to different persons the defendant had made threats against the deceased, some of the threats that he "would settle with him in the ground." One witness testified that defendant said he was going to kill the deceased.
The evidence for the defendant tended to show that the deceased went to the home of the defendant, and that after talking together a few minutes near the cultivator the deceased told defendant he wanted a settlement for the cotton, that he had taken all he was going to take, and pulled his pistol and fired two shots at the defendant; that the defendant fell with his left hand on the cultivator, and pulled his pistol with his right hand, and fired several shots at the deceased.
The following question was propounded by the state to one Burns, a state's witness: "State to the jury what Bazzie [the defendant] said to James [the deceased] about settling for the cotton." The answer was as follows: "He would settle with him and settle with him in the ground." The following question was also propounded to said witness, "Did James Horton accuse Bazzie of stealing his cotton?" and the answer was, "Yes, sir." The state's solicitor then said, "State what the defendant said, after being *Page 104 
accused of stealing James Horton's cotton, about threatening the life of James Horton;" and the witness answering said, "He would settle with him and settle with him in the ground." Timely objection was interposed by the defendant to each of the above questions, and motion made to exclude each answer on the ground that the evidence was "illegal, irrelevant, and immaterial and calls for the details of a former difficulty." The court overruled the objections and the motions to exclude. The foregoing questions and answers related to statements made on different days a short time previous to the fatal difficulty. The same questions were asked other witnesses, the same objections interposed, and the same rulings made by the trial court.
In Gamble v. State (Ala.App.) 99 So. 662,[1] Bricken, P.J., speaking for the court, says:
 "If there had been a controversy between the defendant Margaret Gamble and Brooks, the owner of the barn, about the division of crops, proof of such fact would be admissible as tending to show a motive for the burning, and for like reason this defendant's threats, or declarations in the nature of threats before this commission of the offense charged, would also be admissible."
In Woods v. State, 76 Ala. 35, 52 Am. Rep. 315, where the defendant was indicted for the larceny of cotton from a person with whom he had a settlement as his landlord, his declarations of dissatisfaction with that settlement, and that he was determined to have satisfaction, were held admissible against him as tending to show a motive for the larceny.
The defendant's threats, or declarations in the nature of threats, against the deceased made prior to the killing are admissible in evidence against him as evincing malice, and as declarations of a criminal intent. Winslow v. State, 76 Ala. 42; Griffin v. State, 90 Ala. 596, 8 So. 670; Myers v. State,62 Ala. 599; Henderson v. State, 70 Ala. 29; Jones v. State, 76 Ala. 8.
It was competent for the state to show that the deceased accused the defendant of stealing his (deceased's) cotton, and that the defendant said he was "going to settle with him and settle with him in the ground." The preceding accusation elucidated the alleged threat. Whether the declaration of the defendant was a threat to take the life of the deceased was a question for the jury, as was also its weight and probative force.
The court in its oral charge instructed the jury in part as follows:
 "In order for a defendant to invoke the plea of self-defense he must not have been at fault in bringing on the difficulty; (2) he must have retreated if there was a reasonable mode of retreat without the increase of danger."
There was exception to each of the above portions of the oral charge "so far as said elements of self-defense or either of said elements of self-defense applied as a defense to the offense of manslaughter in the first degree." In other words, the contention is that (1) freedom from fault in bringing on the difficulty and (2) the duty to retreat, two of the elements of self-defense, are not applicable to the charge of manslaughter in the first degree. The elements of self-defense are essentially the same as applied to manslaughter in the first degree and to murder in either degree.
The essential elements of self-defense, as established by repeated decisions of this Court and our Supreme Court, are: (1) That the defendant must be free from fault in bringing on the difficulty; (2) there must be a present impending peril to life or danger of great bodily harm, either real or so apparent as to impress on the mind of a reasonable person a reasonable belief of an existing necessity; (3) there must be no reasonable mode of escape from the threatened injury without increasing the danger. 1 Mayf. Dig. p. 806, par. 7. A plea of self-defense is not availing to him who is not free from fault in the creation of a necessity to take the life of another. 1 Mayf. Dig. p. 807, par. 8, and page 808, par. 10. When the evidence tends to show that there was a present pressing necessity on the part of the defendant to take life, and that there was no reasonable mode of escape, the burden is on the state to show by the evidence that the defendant was at fault in bringing on the difficulty. 1 Mayf. Dig. p. 810. par. 16.
The defendant excepted to that portion of the court's oral charge as follows:
 "I will not state what constitutes the offense of manslaughter in the second degree because I do not think the facts in the case would show any such degree of manslaughter."
The evidence was without conflict that the blow which resulted in the killing was aimed at the person slain, and manslaughter in the second degree has no place in the case. The homicide was either murder or manslaughter in the first degree, or was excusable. Death caused by a blow intentionally inflicted with an instrument calculated to produce death, unless shown to have been done in self-defense, can never be less than manslaughter in the first degree. Compton v. State, 110 Ala. 24, 20 So. 119; Collier v. State, 69 Ala. 247; Ex parte Brown, 65 Ala. 446.
Error, if any, in the court's giving the instruction excepted to without request in writing, will not work a reversal. *Page 105 
We find no error in the record. The judgment of the circuit court is affirmed.
Affirmed.
[1] 19 Ala. App. 590.