### WINCHESTER v. STATE.  (6 Div. 424.)

(Court of Appeals of Alabama.  Aug. 19, 1924.)

**1. Witnesses ⬌260—Question as to testimony before grand jury proper for purpose of refreshing recollection.**

A witness may be questioned as to his testimony before grand jury for purpose of refreshing his recollection.

**2. Witnesses ⬌260—Witness, for purpose of refreshing recollection, properly questioned as to what he stated in grand jury room.**

In liquor prosecution, witness was properly questioned as to what he stated in grand jury room, where solicitor explicitly stated that it was for purpose of refreshing witness' recollection.

**3. Witnesses ⬌244 — Leading questions to one's own witness proper, where witness apparently unwilling to testify.**

Solicitor was properly permitted to ask leading questions to state witness in liquor prosecution as to his testimony before grand jury, in view of Code 1907, § 4018, where witness was apparently unwilling to testify.

**4. Intoxicating liquors ⬌233(1) — Question whether anybody in car had drunk liquor held not irrelevant.**

Question asked witness in liquor prosecution "whether anybody in car had drunk any of the liquor" was not irrelevant where witness had stated that quart jar exhibited to him on trial appeared to be same as that bought when offense was committed.

**5. Witnesses ⬌370(1)—Cross-examination as to friendship with defendant held proper to show interest or bias of witness.**

Cross-examination of defendant's witness in liquor prosecution, as to his friendship with defendant, was relevant and proper to show interest or bias of witness.

**6. Witnesses ⬌287(4)—Redirect examination bringing out further details of conversation testified to on cross-examination held proper.**

Where witness was asked on cross-examination as to a conversation between himself and others when arrest of defendant was made, redirect examination by state seeking to bring out further details of such conversation was proper.

**7. Intoxicating liquors ⬌238(1)—Affirmative charge properly refused, where ample evidence to justify conviction.**

Affirmative charge in liquor prosecution was properly refused, where there was ample evidence, if believed by jury, to justify conviction.

**8. Criminal law ⬌723(1)—Remarks of solicitor held not to require reversal in view of subsequent explanation.**

Remarks of solicitor in liquor prosecution, that "We are not going to let the name of Winchester besmirch this county," did not constitute error, though another party by that name was then indicted for murder, where, on objection, solicitor immediately pointed to defendant and stated that it was that defendant to whom he referred, and counsel for defendant seemed satisfied with explanation.

**9. Criminal law ⬌713—Great latitude permitted attorneys in their arguments.**

Great latitude is permitted to attorneys in their arguments.

**10. Criminal law ⬌1208(5)—Court without authority to assess fine against defendant in addition to hard labor, assessment of fine being for jury.**

Jury's verdict in liquor prosecution, finding defendant guilty as charged in indictment, did not authorize court to sentence defendant to hard labor and to also assess a fine and require defendant to work it out; assessment of fine being within province of jury.

Appeal from Circuit Court, Tuscaloosa County; Fleetwood Rice, Judge.

Tom Winchester was convicted of violating the prohibition law, and appeals. Corrected and affirmed.

Ed Crowe, a witness for the state, testified that on the occasion in question he with

---

others went up to defendant's house, and stopped down the road about four blocks from defendant's house. He was then questioned as follows by the solicitor:

"I want to refresh your recollection. Didn't you testify before the grand jury that you went up there with Mr. Jones and stopped in front of Mr. Winchester's house?"

The witness answered that he told the grand jury they stopped down the road, and if he said they stopped in front of the house he didn't remember it. He was further interrogated:

"To refresh your recollection, didn't you tell Mr. Willis Jones and Mr. Claude Jones went up to Mr. Winchester's? * * * Didn't you tell him that you went to Tom Winchester's? Don't you remember telling him that?"

The witness answered that he didn't remember. He was asked further:

"To refresh your recollection, didn't you testify before the grand jury * * * that you went with Mr. Claude Jones in a car and stopped before Mr. Tom Winchester's house; * * * Mr. Claude Jones went in the house and got the whisky; came back. Did you testify to that before the grand jury or not?"

Defendant's objections being overruled, witness answered: "No, sir; I don't remember saying we stopped before the house."

Defendant's witness Huff testified:

"Mr. Jones and I, we went down to the hall; that is, Deputy Jones; he asked me to help him; said he had been bothered with whisky a good deal out there and asked me to help him that night—I was over there—we was in what we call the negro dance hall, and he says, 'I will step out here,' and says, 'I will be back in a minute.' He didn't come back; I went out, when I went he had Claude Jones and a quart of whisky, and asked Jones where he got it, said he got it from Ed Crowe, and he says: 'Ed, did you let Mr. Jones have this whisky?' He says, 'Yes, sir.' 'Where did you get it?' He says, 'I got it from Tom Winchester.' I says, 'That is a fact?' He says, 'Yes, sir.' 'Where was Mr. Jones?' He says, 'Mr. Jones went as far with me as Mr. Pearson's store, and he waited there until I went and got the whisky.' Pearson's store is upon a hill. Mr. Jones told me at that time that he got it from Ed Crowe. I went and got it. Ed says, 'Yes, he went and got it for Mr. Jones;' said he got it from Mr. Winchester, and Mr. Jones went as far as Pearson's store. Jones said he did not get the whisky from Mr. Winchester. He said he went as far as the store and waited for him."

In rebuttal, state's witness, Willis Jones, testified in response to the question what was said on the occasion when Huff was present:

"Mr. Huff came out of the hall and around; we went around behind the hall with this boy; * * * and I says— We asked him, * * * 'Where did the whisky come from?' and he says, 'Me and the negro went and got this whisky.' We asked him who the negro was, and he says, 'Well, I don't know who the negro was.' * * * He says, 'I would not know him if I would see him again.' Huff says, 'What kind of looking negro was he?' He described him to him, and Mr. Huff went on and got the negro. He asked him, when he came back, 'Is this the negro?' Told him, 'Yes.' I asked him, 'Where did this whisky come from, Ed?' He says, 'Well, white folks,' he says, 'you want to know the truth about it?' * * * He says—raised his head up—he says to Claude; says, 'White folks, we are going to tell the truth about this thing.' Claude says. 'Yes.' * * * Ed turned around to Mr. Huff; says, 'Mr. Huff, I am sort of scared to tell this;' says, 'Mr. Winchester is a bad man.' * * * And he looked at Claude; says, 'White folks, we are going to tell you the truth;' told him, 'Yes;' * * * says, 'well, we got this whisky from Mr. Winchester, Tom Winchester, didn't we?' He says, 'Yes; that is where we got it.'"

At this juncture counsel for the state asked the witness the following question: "Did he say anything about threats Mr. Winchester had made?" Over defendant's objection witness answered: "Yes, sir." He says: "Mr. Winchester had told him, 'You turn me up for selling whisky, and I will kill you.'"

F. F. Windham, of Birmingham, for appellant.

Where a matter inquired about has no bearing on the issues, a general objection is sufficient. McClellan v. State, 117 Ala. 140, 23 So. 653; Montgomery v. State, 17 Ala. App. 469, 86 So. 133. The examination of witness Crowe was improper. Childers v. Holmes, 207 Ala. 382, 92 So. 615; Griffin v. Wall, 32 Ala. 149. The remark of the solicitor in argument was improper. Ganus v. State, 19 Ala. App. 286, 97 So. 117; Windom v. State, 18 Ala. App. 430, 93 So. 79; Bean v. State, 18 Ala. App. 281, 91 So. 499.

Harwell G. Davis, Atty. Gen., and O. B. Cornelius, Asst. Atty. Gen., for the State.

It is within the discretion of the court to allow leading questions. Code 1907, § 4018; 6 Mayfield's Dig. 370. The defendant having inquired into and brought out a part of a conversation, the state had the right to bring out the rest of it. Simmons v. State, 145 Ala. 61, 40 So. 660. It is permissible to show interest or bias of a witness. Arnold v. State, 18 Ala. App. 453, 93 So. 83; Cabel v. State, 18 Ala. App. 557, 93 So. 260; Knox v. State, 18 Ala. App. 358, 92 So. 206; Gilchrist v. State, 19 Ala. App. 16, 95 So. 197. The remarks in argument by the solicitor were permissible. Ala. Power Co. v. Goodwin, 210 Ala. 657, 99 So. 158.

FOSTER, J. Tom Winchester was indicted by the grand jury of Tuscaloosa county

for the crime of selling or otherwise disposing of prohibited liquors, and was convicted in the circuit court by a jury. From this conviction he prosecutes this appeal.

The state's theory, which was evidently believed by the jury, was that Claude Jones and Monroe Garner went to a negro dance hall, where they met a negro named Ed Crowe, who, with another negro, and Claude Jones and Monroe Garner, went to the home of Tom Winchester, the defendant, and bought from him a quart of white liquor for $3.

There are 20 assignments of error, which are all insisted upon by defendant's counsel, but many of them raise the identical question. The more important of these assignments will be dealt with here.

[1-3] It is insisted that it was error to permit the solicitor to question Ed Crowe as to what he had stated in the grand jury room, and also to permit the solicitor to propound leading questions to this witness. As to the first proposition, the law is well settled that a witness may be questioned as to his testimony before the grand jury, for the purpose of refreshing his recollection, and this was the case here, and the solicitor explicitly stated to the witness that this was his purpose. As to the second proposition, it does not appear that the trial court erred in permitting leading questions to Ed Crowe. It is well known that it frequently becomes necessary to lead a witness who is unwilling to testify, and the Code of Alabama (section 4018) rightly gives this discretion to trial courts. There would seem that no abuse of this discretion appears in this record.

[4] Defendant objected to the question propounded to Claude Jones, "If anybody in the car had drunk any of the liquor." It is insisted that this was immaterial and irrelevant. The witness had stated that the quart jar exhibited to him appeared to be the same as that bought on the night in question, and therefore it was not irrelevant or immaterial testimony that was elicited from this witness.

[5] On cross-examination the solicitor asked the defendant's witness, Williamson, "You and he are good friends; you just like to help him out when he was indicted for selling liquor?" Objection was interposed to this question by counsel for the defendant. This question, we consider, was relevant and proper in order to show the interest or bias of the witness. Arnold v. State, 18 Ala. App. 453, 93 So. 83; Cabel v. State, 18 Ala. App. 557, 93 So. 260; Knox v. State, 18 Ala. App. 358, 92 So. 206 and 920; Gilchrist v. State, 19 Ala. App. 16, 95 So. 197.

[6] Claud Jones, state's witness, was asked, on cross-examination by defendant's counsel, as to a conversation between himself and Ed Crowe and the officers when the arrest was made. On redirect examination the

state sought to bring out further details of this conversation, which was objected to by defendant. Under the authority of Simmons v. State, 145 Ala. 61, 40 So. 660, we hold that the other parts of the conversation could be brought out by the state when defendant had questioned as to certain parts of the same conversation. After a consideration of the testimony of Willis Jones, we believe that there is no reversible error in anything admitted, as being contradictory to the testimony of defendant's witness H. I. Huff.

[7, 8] The affirmative charge was given as to count 1, and refused as to the three remaining counts. There was ample evidence, which if believed by the jury, justified the conviction, and hence the affirmative charge as to counts 2, 3, and 4, was properly refused. Counsel for defendant places especial stress on the alleged statement by the solicitor during the course of his remarks to the jury, "We are not going to let the name of Winchester besmirch this county." It would appear that one Alf Winchester was then in the county jail of Tuscaloosa county, indicted for murder. Defendant's counsel strongly contends that the effect of this statement so inflamed the minds of the jury that it was not possible for it to act in an unbiased manner. It would seem that as soon as the solicitor made the statement, counsel for the defendant promptly called his attention to the reference, and the solicitor immediately pointed to the defendant, and stated that it was defendant to whom he referred. Counsel for defendant appeared satisfied with this explanation.

[9] While this court never hesitates in a proper case to reverse for improper remarks made during oral argument by the solicitor, nevertheless, for aught that appears in the record, no injustice was done to defendant in this case by the remark of the solicitor. Great latitude is permitted to attorneys in their arguments. Perhaps defendant could justly complain that all the solicitor said in his argument was prejudicial to the interests of the defendant. Alabama Power Co. v. Goodwin, 210 Ala. 657, 99 So. 158.

[10] The verdict of the jury was: "We, the jury, find the defendant guilty as charged in the indictment." There was an adjudication of guilt, and the court assessed a fine of $50 and sentenced the defendant to hard labor for the county for 20 days to pay the fine, and to additional hard labor for 6 months as punishment. The trial court was without authority to assess a fine against the defendant, this being the province of the jury trying the case. The judgment of the circuit court is here corrected by striking that portion assessing a fine of $50 and sentence to hard labor for 20 days to pay the fine, and, as corrected, the judgment of the circuit court is affirmed.

Affirmed.