27 So.2d 27

### PETERSON v. STATE.

#### 4 Div. 920.

Court of Appeals of Alabama.

June 4, 1946.

Rehearing Denied June 25, 1946.

Alto V. Lee, III, and Jas. L. Tindell, both of Dothan, for appellant.

Wm. N. McQueen, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for the State.

CARR, Judge.

Appellant was tried on an indictment charging murder in the first degree and convicted of manslaughter in the first degree. The punishment imposed was eight years in the penitentiary.

In a well prepared brief, able counsel for appellant raise the following questions:

"The assignment of errors may be briefly outlined as follows:

"(1) The trial court erred in over-ruling Defendant's motion for a new trial.

"(2) The trial court erred in over-ruling Defendant's objection to the following question propounded by the State to the witness, Arthur Grubb. 'What did James Wood do with the gun when he took it away from Mr. Peterson?', to which the Defendant excepted.

"(3) The trial court erred in over-ruling Defendant's objection to the following question propounded by the State to the witness, J. L. Corbitt. 'Where did you get it?', to which the Defendant excepted.

"(4) The trial court erred in over-ruling the Defendant's objection to the following question propounded by the State to the Defendant. 'What was between you and that field to prevent you from getting away?', to which the Defendant excepted.

"(5) The trial court erred in over-ruling Defendant's objection to the following question propounded by the State to the Defendant. 'Nothing to prevent your escaping, was there?', to which the Defendant excepted.

"(6) The trial court erred in over-ruling Defendant's objection to the following question propounded by the State to the Defendant. 'There was not a thing in the world between you and that cornfield to prevent your going into it, was there?', to which the Defendant excepted.

"(7) The trial court erred in over-ruling Defendant's objection to the following question propounded by the State to the witness, Elvanie Willis. 'Elvanie, did you and your husband, Dallie Willis, go up to Mr. Douglas' house that morning before Dallie was shot?', to which the Defendant excepted.

"(8) The court erred in over-ruling Defendant's objection to the following question propounded by the State to the witness, Elvanie Willis. 'Was Mr. Peterson at yours and Dallie's house when you all left to go up to Mr. Douglas' house?', to which Defendant excepted.

"(9) The trial court erred in over-ruling Defendant's objection to the following question propounded by the State to the witness, Elvanie Willis. 'Did he come up to Mr. Douglas' house after you all?', to which the Defendant excepted."

We will treat these inquiries in the order in which they are noted above.

In many respects the evidence is not in serious conflict. That for the State tended to establish that the appellant went to the

home of the deceased early on Sunday morning accompanied by Arthur Grubb. During the interim between their arrival and the fatal shooting, about two hours later, several others joined the party. Appellant left and returned with a double barreled shot gun, but James Wood, a member of the assembled group, took the weapon from him and carried it away. Appellant forthwith went to his home and soon came back with another shot gun. At this time he re-entered the house of the deceased and sat on the front porch. In a reasonably short period of time an automobile drove up and the defendant pointed his gun at the occupants of the car and ordered them to leave. Then it was that the deceased attempted to intercede, and we quote at this point from the record:

"Q. What did Dallie do? A. He went up to Mr. Peterson and told him to let him have the gun, he said, Let me have your gun and I will put it up until you get ready to go. It's liable to go off and shoot some of my little children.

"Q. Dallie Willis then went towards Mr. Peterson you say? A. Yes, sir.

"Q. And he was talking to Mr. Peterson when he said, Let me take your gun and put it up, that it might go off and kill some of his children? A. Yes, sir.

"Q. Then what happened? A. Mr. Peterson told him, I ain't going to give nobody my gun. He said, Get back don't come on me, I will blow your lights out.

"Q. Blow your lights out? A. Yes, sir.

"Q. Then what happened? A. So he said, No, sir; you won't, Mr. Peterson, let me have it, you can get it when you get ready to go, I will take care of it and when you get ready I will give it right back to you, and about that time Mr. Alex told him to stop, and he didn't stop and he shot him.

"Q. What was Dallie doing when he was trying to get the gun or asking Mr. Peterson for that gun? A. He was waving his hands, asking him got the gun.

"Q. Did Dallie have anything in his hands whatsoever? A. No, sir; not that I seed.

"Q. Not that you saw? A. No, sir.

"Q. Did you see his hands? A. Yes, sir."

The appellant, as a witness in his own behalf, admitted that he shot the deceased, but claimed at the time the latter was approaching him in close proximity with an open knife in his hand. An officer testified that he found a knife under the dead body of the deceased, but it was not open.

█ If the jury accepted the version of the occurrence as disclosed by the State's witnesses, its verdict and punishment were clearly justifiable, and we do not feel authorized to disturb this finding.

█ As was observed in Girardino v. Birmingham Southern R. Co., 179 Ala. 420, 60 So. 871, 872: "The verdict of a jury and the judgment of a trial court are solemn things; and they should not be overturned by an appellate court, unless a good, legal reason therefor is shown." See also Freeman v. State, 30 Ala.App. 99, 1 So.2d 917; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

█ Insistences for error numbered 2 and 3 relate to the gun which was undisputedly taken from the appellant by James Wood. The answer to the first question appears of record to be: "He carried it toward home." The evidence discloses that Wood had given the gun to the officer, Corbitt, and it was exhibited at the trial. The evident purpose of the second question, supra, was to determine how the witness came into possession of the gun so that proper identification could be made of the proposed exhibit to the testimony. Clearly no harm could inure to appellant as a result of this evidence. These facts were not in controversy or conflict in relation to either inquiry. Jones v. State, 23 Ala.App. 395, 126 So. 178.

██ When the defendant was testifying in his own behalf the questions set out in "assignments of error" 4, 5, and 6 were addressed to him on cross-examination. We are not impressed that the wide latitude given to cross-examination of witnesses was abused in either of these instances. Clements v. State, 19 Ala.App. 177, 95 So. 831; Glover v. State, 25 Ala. App. 423, 148 So. 160.

The case of Pynes v. State, 207 Ala. 395, 92 So. 663, relied upon by appellant in brief is not an authority in point. In the Pynes case the question was propounded to the accused on direct examination and offended the rule against calling for an answer from a witness that would be a conclusion.

While testifying the appellant denied that he had been to the home of the deceased during the morning prior to the time the State's witnesses claimed he appeared with the first shot gun. In fact, he stated that on his first visit he had the gun with him and was on his way to feed his hogs and it was at this time, while passing the home of the deceased, that the gun was wrested from him by James Wood. He further testified that he returned to his home and got the second gun, but at no time during the morning before the fatal shooting did he go into or on the porch of deceased's home.

We hold that it was permissible for the State on rebuttal to attempt to show a contrary state of facts, and the questions noted in 7, 8, and 9, above, relate to this effort. In view of all the circumstances and the contentions of the appellant with reference to the incidents and his conduct leading up to the killing, it cannot be successfully contended that this was an endeavor to elicit evidence that was a contradiction of an immaterial inquiry.

We have herein treated all questions insisted upon in brief of counsel, and it appears in so doing we have given attention to all matters of meritorious importance.

The judgment of the court below is ordered affirmed.

Affirmed.