37 So.2d 670

## SCOTT v. STATE.

### 6 Div. 583.

Court of Appeals of Alabama.

May 11, 1948.

Rehearing Denied June 15, 1948.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

Ross, Ross & Ross, of Bessemer, for appellant.

CARR, Judge.

On an indictment charging murder in the first degree, the appellant was convicted of murder in the second degree.

Without dispute in the evidence, in an encounter between the accused and Clint Mathis, the latter received three pistol-shot

wounds, one in the hand, one in the chest, and another entered the body near the center of the back. Death ensued within a short time.

The evidence for the State tended to show that Mathis, with some companions, had trouble with the lights to the automobile in which they were riding, and they stopped the car not a very great distance from the home of the appellant. The latter came along in his car and made complaint about the street being partially blocked by the disabled vehicle. Some harsh words and abusive language were exchanged. The appellant succeeded in passing and drove on to his home. There he left his automobile and forthwith came back to the place where the deceased's car was stopped. As he approached, with pistol in hand, he made a threat that he would kill Mathis. The latter jumped out of his car, and a tussle or fight between the two followed immediately. It was during this encounter that the three shots were fired. The last shot was fired by the appellant while the deceased had his back turned. Mathis did not have any weapon in his hand.

The testimony of the accused differed in the following respects. He denied that there was any cursing or profane language used by any of the group when he neared and passed the stalled car. He stated that he took his pistol out of his car and returned to the scene of the homicide with it in his pocket. He disclaimed that he made any threats, but on the contrary he testified that as he approached he heard someone say, "There he is get him." At this time, the deceased grabbed him, and the two engaged in physical combat, during which time both participants had hold of the pistol and it fired three times. He denied that he shot the deceased as the latter went away from him.

This is a sufficient delineation of the tendencies of the testimony to form a basis for us to illustrate the questions we are called upon to review.

■ The undertaker or mortician testified that he had been engaged in his profession for about forty years. During this period of time he had handled several hundred dead bodies where death had been caused by gunshot wounds. Clearly, he was competent to give as his opinion that Mathis' death was caused by the pistol-shot inflictions. Hicks v. State, 247 Ala. 439, 25 So.2d 139; Thomas v. State, 249 Ala. 358, 31 So.2d 71. This aside, it cannot be seriously contended to the contrary.

■ If it be tenable that the mortician was unauthorized to state that the inflictions were made with a 38 caliber pistol, it resulted in no prejudicial harm to the accused. Subsequently, the defendant deposed that the pistol he had was of this caliber. Bankhead v. State, 33 Ala.App. 269, 32 So.2d 814; Hornsby v. State, 16 Ala.App. 89, 75 So. 637; Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

■ Whether or not leading questions will be allowed addresses itself to the sound discretion of the trial judge. The rulings with reference thereto show no abuse. Millhouse v. State, 235 Ala. 85, 177 So. 556; King v. State, 24 Ala.App. 267, 134 So. 133.

Appellant's attorney laid an impeachment predicate to one of the State's witnesses. The witness denied that he made the statement. Counsel went further, however, and asked, "What did you tell them?" The reply was, "I told them the same thing I told you."

On redirect examination, over the objections of appellant, the court allowed answer to this question propounded by the solicitor, "I will ask you, John, what did you tell the police officer about the way that Henry Scott shot Clint Mathis."

Some authorities hold that where a party litigant lays a predicate to impeach an opposing witness and receives only a simple denial and does not go into the supposed conversation, it is error to allow the other party, on redirect examination, to bring into the evidence what the witness did say. Martin v. State, 119 Ala. 1, 25 So. 255; Cathcart v. Webb & Morgan, 144 Ala. 559, 42 So. 25. Some authorities take a contrary view. Haley v. State, 63 Ala. 83; Henderson v. State, 70 Ala. 29; Richardson v. State, 237 Ala. 11, 186 So. 580; Louisville & N. R. Co. v. Malone,

109 Ala. 509, 20 So. 33; Palmer v. State, 168 Ala. 124, 53 So. 283.

We are not called upon to make decision on this point which appears to be in a conflicting state. In the case at bar counsel for appellant did bring forth in the evidence a part of the conversation. The entire questioning pertaining to the matter extended beyond a simple denial by the witness. Our approach, therefore, must be in consonance with the familiar rule which provides that if one of the parties introduces into the evidence a part of a conversation the other party should be allowed equal right of proving the whole or any portion thereof. Key v. State, 240 Ala. 1, 197 So. 363; Brewer v. State, 209 Ala. 411, 96 So. 198; Winchester v. State, 20 Ala.App. 243, 102 So. 535.

Several of the appellant's character witnesses were asked whether or not they had ever heard the accused use profane language. The court did not allow answers thereto. It is insisted that the competency of this inquiry cannot be denied in view of the conflict in the testimony. As we have indicated, the defendant denied that he used profane language when he first encountered the deceased and his companions at the stalled car. This line of inquiry could in no manner make it less probable that the appellant did in fact curse on the occasion of instant concern. It could, therefore, have no effective probative value as an aid to establish the truth of the conflicting evidence. It had no relation whatsoever to the traits of character which had reference and analogy to the nature of the crime for which the defendant was being tried.

It appears that the deceased had, a short time prior to the homicide, entered a plea of guilty to a larceny charge. It was disclosed, also, that there were other pending indictments against him which charged like offenses. Appellant was denied the tender in evidence of these facts. The position is urged that, in view of this prior record, it was entirely logical to presume that the deceased had parked his car for the purpose of committing larceny or robbery and the actions and conduct of the accused on the occasion should be considered by the jury in the light of this record.

The efficacy and potency of this urgency are entirely destroyed by the evidence of the appellant. He testified that he did not know any of the parties at the parked car and that he returned to the place after he went home for the sole purpose "to assist those fellows with the car with the lights out." We do not wish to be understood as holding that the facts, just noted, alone measure or determine the incompetency of this evidence.

Counsel cites many authorities which in effect hold that similar offenses may be shown in evidence to shed light on identity, intent, etc. It is clearly evident that this doctrine or principle would be out of place and incongruous if applied in the matter about which we are now concerned.

There were a number of rulings against the position of appellant during the cross examination of witnesses. We have carefully examined each of these and it does not appear in any incident that the judge abused the wide latitude here allowed. Peterson v. State, 32 Ala.App. 439, 27 So. 2d 27; Glover v. State, 25 Ala.App. 423, 148 So. 160.

We will now review the written instructions which were refused to appellant.

Number 4 was approved in Griffin v. State, 150 Ala. 49, 43 So. 197, but this holding was abandoned in Dawson v. State, 196 Ala. 593, 71 So. 722. By the use of the word "supposition" the charge is inaccurate and misleading. Clark v. State, 239 Ala. 380, 195 So. 260. It contains the vice also of not being predicated on the evidence. Edwards v. State, 205 Ala. 160, 87 So. 179; Minor v. State, 15 Ala.App. 556, 74 So. 98.

We had occasion to review charge number 22 in the recent cases of Bringhurst v. State, 31 Ala.App. 608, 20 So.2d 885, and Brown v. State, 33 Ala.App. 97, 31 So.2d 670. We there illustrated the propriety of its refusal.

In the early case of Pickens v. State, 115 Ala. 42, 22 So. 551, refused charge number 27 was approved. In many subsequent cases the instruction has been

condemned. See, Allen v. State, 134 Ala. 159, 32 So. 318; Spraggins v. State, 139 Ala. 93, 35 So. 1000; Mason v. State, 153 Ala. 46, 45 So. 472; Bailey et al. v. State, 168 Ala. 4, 53 So. 296, 390; Pope v. State, 174 Ala. 63, 57 So. 245; Bryant v. State, 185 Ala. 8, 64 So. 333; Millhouse v. State, 235 Ala. 85, 177 So. 556; Moye v. State, 12 Ala.App. 127, 67 So. 716; Cunningham v. State, 14 Ala.App. 1, 69 So. 982.

Charges numbered 41, 42, 43, 44, and 45 are general affirmative charges. Some are related to specific degrees of unlawful homicide. It is not necessary to cite authorities to sustain our view of the propriety of the disallowing of each of these instructions. The delineation of the tendencies of the evidence amply illustrates our conclusion here.

We have responded to all meritorious questions which the record presents.

The judgment of the primary court is ordered affirmed.

Affirmed.

## On Rehearing.

In our original opinion we sustained the ruling of the lower court in his view that the undertaker or mortician possessed sufficient experience and qualifications to testify that in his opinion the inflicted pistol-shot wounds caused the death of the deceased.

On application for rehearing it is insisted that we did not give due weight and consideration to the cases of Jones v. State, 155 Ala. 1, 46 So. 579, and Anderson v. State, 19 Ala.App. 606, 99 So. 778. We did not fail to note that these cases were cited in brief of counsel in support of the position that the court was in error in admitting the evidence. However, the facts there were so dissimilar to those in the case at bar that we did not deem it necessary to point out the distinction.

In the Jones case, the court observed: "Witnesses Fairley and Bramlett, neither of whom were shown to be experts, were permitted to testify" etc.

In the Anderson case [19 Ala.App. 606, 99 So. 779], the cause of death became a very serious factual conflict. A physician had given as his opinion that death was caused by a "diseased and ruptured blood vessel leading off from his heart." In passing on the question the author of the opinion cited the Jones case, supra, and inadvertently stated that the court held in the Jones case that only a *medical* expert could draw such a conclusion. The opinion in the Jones case makes no reference to *medical* experts but only *experts*. The effect of the holding in the Anderson case is that the mere fact that a person may be an undertaker does not per se make him qualified to give the testimony of instant concern.

From aught appearing no effort was made in the Anderson case to qualify the witness by showing his experience and observation.

"To authorize a witness to give an opinion as an expert, it must appear that, by study, practice, experience, or observation as to the particular subject, he has acquired a knowledge beyond that of ordinary witnesses." Clemons v. State, 167 Ala. 20, 52 So. 467, 471.

In the rather recent case of Hicks v. State [247 Ala. 439, 25 So.2d 140], cited in our original opinion, the Supreme Court held: "The nature of a wound or injury, its probable cause and effect can be stated by expert medical witnesses, or witnesses shown to be familiar with such questions; such as, an undertaker, or others showing competency. Whether a witness is shown to possess the requisite qualifications is a preliminary question said to be largely within the discretion of the court."

In the case at bar the wounded man died a short time after receiving three pistol-shot inflictions, one in the hand, one in the chest, and another which entered near the center of the back. The shots were fired from close range.

Clearly there was not a serious factual issue presented as to the cause of death.

The other questions upon which insistence is made on application for rehearing had our attention and treatment when we prepared the original opinion. Any further elaboration would in effect be a repetition.

The application for rehearing is overruled.