# Collins *v.* The State.

*Indictment for Murder.*

1. *Organization of jury in capital case.*—Under the statute, (Code, § 5005), the regular jurors drawn and summoned for the week in which the day for the trial is set, together with the special jurors drawn from the jury box by the presiding judge, constitute a special venire from which the jury to try the defendant in a capital case is to be drawn. a copy of which special venire must be served upon the defendant; and therefore, the name of a juror who was drawn as a juror for the week in which the day for trial was set, but was not sum-

[Collins v. The State.]

moned, is properly omitted from the special venire served upon the defendant.

2. *Same.*—Mistakes in the names of special jurors constitute no grounds for quashing the venire, when the court in accordance with the statute, (Code, § 5007), discards the names in which the mistakes occurred and supplies the places of said jurors with two other persons summoned by the sheriff under an order of the court, from the qualified citizens of the county.

3. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, a statement made by a person other than the defendant, five minutes or more before the shooting of the deceased by the defendant, not being contemporaneous in point of time with the difficulty, constitutes no part of the *res gestae* of the difficulty, and is not admissible in evidence; and this is true though the statement was made by the person who was with the defendant at the time of the killing, and was jointly indicted with him.

4. *Same; same.*—On a trial under an indictment for murder, a statement made immediately before the killing by a person who was with the defendant, and which led to the difficulty which resulted in the killing, is a part of the *res gestae* of the transaction in which the shooting was done, and is, therefore, admissible in evidence.

APPEAL from the Circuit Court of Hale.

Tried before the Hon. JOHN MOORE.

The appellant in this case, Ben Collins, was indicted with Flan Flanagan, William Sample and Carrie Collins, for the murder of John Winningham. There was a severance, and on the trial, this appellant was convicted of murder in the first degree and sentenced to be hanged.

When the case was called for trial the defendant moved the court to quash the venire upon the following grounds: "1st. Because one C. G. Breitling was one of the regular jurors drawn and summoned for this week, and his name was not upon the venire served upon the defendant or his counsel. 2d. Because the venire served upon the defendant contained the name of one J. B. Garbrew, as one of the regular jurors drawn and summoned for the week, and there is no such person in the county as J. B. Garbrew. 3d. Because the venire served upon the defendant or his counsel contained the name of one J. W. Stephen, Beat Six, as a

special juror, and there is not now, nor was there at the time the jury box was prepared from which said name was drawn, such a person in said Beat Six, or in Hale county, as J. W. Stephens." On the hearing of this motion it was shown by the evidence that C. G. Breitling was drawn as a juror for the 2d week of the term of court (which was the week set for the trial of this case) by the jury commissioners, and that his name together with the names of the other jurors so drawn for said week, was on the list furnished the sheriff of said county, but that said C. G. Breitling was not summoned as a juror. As to the said J. G. Garbrew and J. W. Stephen, it was shown that there was not in Hale county at the time the jurors were drawn or at the time of the trial, or any other time, any person by the name of J. B. Garbrew or J. W. Stephen, but that there was in Hale county a man by the name of J. B. Garber and a man by the name of J. W. Stephenson. The court overruled the motion to quash the venire, and to this ruling the defendant duly excepted. Thereupon the court directed that the names of J. B. Garbrew and J. W. Stephen be discarded from the venire, and directed the sheriff to summon from the qualified citizens of said county two persons to take the places of those so discarded and the names of those so summoned were furnished to the counsel for the State and to the counsel for the defendant, and such names were then put in the hat from which the jury to try the case was drawn.

The evidence for the State showed that J. W. Winningham was killed by being shot with a gun which was in the hands of the defendant, Ben Collins; that the killing occurred at Moundville, in Hale county, between 8 and 9 o'clock at night; that at the time of the killing Flan Fanagan and Will Sample and Carrie Collins were present.

During the examination of one Thompson as a witness for the State, he testified that he was at Mounville on the night John Winningham was shot; that the shooting occurred on the railroad track not far away from the store of one Griffin; that about five minutes before the shooting he was at Griffin's store and Ben

Collins and Carrie Collins were in there, and that as
they walked out Ben Collins was in front and Carrie
Collins was about 15 feet behind him, and Carrie Col-
lins made a statement as she was going out of the store.
The solicitor then asked the witness: "What did Carrie
Collins say as she came out?" The defendant objected
to this question, on the ground that it called for illegal
and irrelevant evidence, and because no declarations of
Carrie Collins could bind the defendant. The court
overruled the objections and the defendant duly · ex-
cepted. Answering the question, the witness said that
Carrie Collins applied ·very opprobrious epithets to the
white people and said that some of them "would go to
hell tonight."

Luther M. Owens, a witness for the State, testified
that he was at Moundville at the time John Winning-
ham was killed; and he was only a few feet away from
Winningham at the time the shooting occurred;
and that the parties to the shooting were stand-
ing on or near the railroad track. The solicitor
asked the witness the following question: "Did
you, a short time before you were standing on the side
track, hear Carrie Collins say anything, and if so,
what?" The defendant objected to this question, on the
ground that it called for irrelevant and incompetent tes-
timony, and because the declarations of Carrie Collins
could not bind or prejudice the defendant. The court
overruled the objection, and the defendant duly ex-
cepted. The witness then, in answer to that and other
questions, stated, that just a few minutes before the
shooting Carrie Collins said: "The G— d— white folks
are going to hell here tonight;" that the witness then
asked Carrie Collins "if she meant that for him," and
upon her replying that she did, he thereupon slapped
her, when ·Flan Flanagan started towards him, and as
Winningham started towards Flanagan a gun was fired
and Winningham was shot, from the effects of which
wound he died.

A. M. TUNSTALL, for appellant.—The motion to quash
should have been sustained.—*Roberts v. State*, 68 Ala.
522.

[Collins .v. The State.]

The objection to the testimony as to what Carrie Collins stated were clearly well taken. Such statements constituted no part of the *res gestae* and were inadmissible in evidence.—*Phoenix Ins. Co. v. Moog*, 78 Ala. 306; *McAnally v. State*, 74 Ala. 16; *Browning v. State*, 30 Miss. 656.

MASSEY WILSON, Attorney-General, for the State.— The motion to quash the venire was properly overruled. *Burton v. State*, 107 Ala. 108.

The statements of Carrie Collins were, as will be seen from the evidence, contemporaneous with the main fact, the shooting, and illustrative of its character, and were properly admitted as a part of the *res gestae*. Aside from this feature, the presence of the defendant with the other parties was evidence of a community of design; at least sufficient evidence of such a design to authorize the jury to find that there was a conspiracy. *Smith v. State*, 136 Ala. 1; *Blount v. State*, 49 Ala. 381; *Smith v. State*, 52 Ala. 407; *Wesley v. State*, 52 Ala. 182.

DOWDELL, J.—The court properly overruled the motion to quash the *venire*. The return of the sheriff showed that Breitling, one of the regular jurors drawn for the week for which the trial was set, was not summoned; his name, therefore, was properly omitted from the list of jurors served on the defendant. Under the statute, the regular jurors drawn and *summoned* for the week in which the day for the trial was set, together with the special jurors drawn from the jury box by the presiding judge, constituted the special *venire*, a copy of which the law required to be furnished the defendant.—Code, § 5005; *Burton v. State*, 107 Ala. 108.

As the two special jurors, Garbrew and Stephen, in whose names mistakes occurred, the court followed the direction of the statute in discarding them and supplying their places with two other persons summoned by the sheriff under the order of the court from the qualified citizens of the county.—Code, § 5007. Consequently

there was no error in the action of the court in refusing the motion to quash on the grounds relating to these persons. See also section 4997 of the Code.

The declaration or statement made by the woman Carrie Collins upon leaving the store of Griffin, testified to by the witness Thompson, and which was admitted in evidence against the objection of the defendant, should have been excluded. This statement was made five minutes or more before the shooting of the deceased by the defendant at the depot, and formed no part of the *res gestae* of the difficulty in which the shooting occurred. It was not contemporaneous in point of time with the difficulty resulting in the shooting, nor does the evidence show that this statement bore any causal relation to the shooting. Nor was it admissible as the declaration of a co-conspirator. The evidence was not sufficient to authorize the inference of a conspiracy participated in by the woman Carrie Collins independent of the statement made by her, and unless a conspiracy had been shown in which she participated, her statement would not be competent evidence against the defendant. The second statement of the woman Carrie Collins, testified to by the witness Owens, made at the depot, formed a part of the *res gestae* of the transaction in which the shooting was done, that resulted in the death of the deceased. The statement bore a causal relation to the difficulty; indeed, it provoked the difficulty that terminated in the tragedy. It was one continuous transaction from the statement so made to the killing; all transpiring in a very short space of time. The statement, therefore, may be said to have been contemporaneous with the main fact, and constituted a part of the *res gestae*, and was competent in evidence.

For the error pointed out, the judgment must be reversed and the cause remanded.

Reversed and remanded.