(92 South. 663)

## PYNES v. STATE.   (4 Div. 926.)

(Supreme Court of Alabama. Feb. 9, 1922. Rehearing Denied April 27, 1922.)

**1. Indictment and information ⚖➡32(3)—Each count need not conclude "against peace and dignity of state" if indictment so concludes.**

Each count of an indictment need not conclude "against the peace and dignity of the state," but it is enough that the indictment so concludes.

**2. Criminal law ⚖➡302(4)—Objections to count cured by nolle prosequi, where made part of record and shown in judgment entry.**

An objection to a count in an indictment is met by a nolle prosequi, where the order in pursuance thereof is made a part of the record and shown in the judgment entry.

**3. Indictment and information ⚖➡98—Each count must be in itself sufficient.**

The rule is that each count of an indictment must be sufficient in itself.

**4. Indictment and information ⚖➡28—Each count must be in one paragraph, having separate commencement.**

The orderly and full form of an indictment is to put each count into one paragraph, having a separate commencement (not caption), and as a rule any count in which the commencement is omitted is therefore bad.

**5. Indictment and information ⚖➡133(6)—Demurrer held proper method of attack, where objection went to formal allegation charging authority.**

An objection to a count in indictment, appearing on its face and going to the sufficiency of the charging authority, held to be properly a matter for demurrer, and where defendant moved to quash it was in the unrevisable discretion of the trial court to overrule it and to put him to his demurrer.

**6. Homicide ⚖➡195—Evidence that dog killed by accused, bringing deceased to scene of homicide, was vicious, properly excluded.**

Where accused and his brother had killed a dog belonging to deceased, and when deceased armed himself and came to scene of shooting he was shot and killed by accused and brothers, lying in wait, evidence that the dog killed was vicious was properly excluded.

**7. Criminal law ⚖➡478(1)—Homicide ⚖➡193—Witness could testify as to condition of pistol showing it had not been recently discharged.**

In a prosecution for murder, where accused pleaded self-defense, testimony of wit-

ness for prosecution that he had used pistols and shells a good deal, and that a shell in empty chamber and barrel of revolver found near body of deceased showed that it had not been discharged recently, was relevant and admissible.

**8. Criminal law ⊖424(3)—Evidence of hiding gun after homicide admissible as tending to establish guilt of codefendant.**

In a prosecution for murder, in view of evidence that after one of codefendants had shot deceased accused struck him on the head with the gun, breaking it and causing fracture of skull of deceased, testimony that one of codefendants, within 15 to 30 minutes thereafter, hid the gun, and that it was broken, was admissible, as tending to establish guilt of codefendant.

**9. Criminal law ⊖1144(10)—Statement of assistant prosecutor presumed in good faith to court, and held not statement of fact to jury.**

Where assistant prosecutor made a statement in his place as attorney in an effort to show court relevancy of the fact state was attempting to prove, the presumption was that he was acting in good faith, and it was not statement of fact to jury.

**10. Criminal law ⊖448(3)—Evidence of accused that he could not retreat from alleged attack without adding to his danger inadmissible as conclusion.**

In a prosecution for murder, evidence by accused that he could not retreat from an alleged attack by deceased without adding to his danger was inadmissible, as being his conclusion.

**11. Criminal law ⊖761(11), 815(1)—Requested charges, ignoring evidence and assuming guilt of codefendant, properly refused.**

In a prosecution for murder, requested charges that ignored evidence which tended to show that accused and codefendant plotted to kill deceased and assumed that actual killing was done by one codefendant alone were properly refused.

**12. Criminal law ⊖815(1)—Requested charges as to right to act in defense of brother within curtilage properly refused.**

In a prosecution for murder, requested charges, relating to right of accused to act in defense of brother as affected by alleged fact that his brother was within curtilage of his dwelling house, ignoring evidence from which jury might have inferred that accused laid in wait for deceased, *held* properly refused as pretermitting effect of evidence.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Edgar Pynes was convicted of murder in the first degree, and he appeals. Affirmed.

The following charges are noted as refused to the defendant:

"(6) I charge you that if the testimony shows elements of self-defense on the part of Searcy Pynes, the burden is on the state to satisfy you that Searcy Pynes was not free from fault in bringing on the difficulty before you can convict the defendant."

(7) Same as 6, with this addition:

"And that defendant either fired the fatal shot or aided or abetted Searcy Pynes at the time of or prior to the firing of the fatal shot before you can convict the defendant."

"(13) The doctrine of a person assailed in his dwelling not being required to retreat applies to the curtilage, and if Searcy Pynes was within the curtilage of his own home at the time of the killing he owed no duty to retreat if attacked by the deceased; and in such case you cannot convict defendant, even though you believe he aided or abetted Searcy Pynes in the killing."

(24) Practically the same as 13.

(D) Practically the same as 13 and 24.

Charges 14 to 24 have reference to an acquittal if any juror entertain any reasonable doubt as to whether the killing was done by Searcy Pynes with malice aforethought so far as murder in the first degree is concerned; also, as to murder in any degree if any juror entertained any reasonable doubt as to whether the killing was done with malice; also, if any juror entertains any reasonable doubt as to whether or not defendant aided or abetted Searcy Pynes at the time of or prior to the fatal shot.

R. C. Williams and Reid & Doster, all of Dothan, for appellant.

The court erred in overruling the motion to quash the indictment. Minor, 28; 40 Ala. 24; 126 Ala. 40, 28 South. 619. The court erred in admitting the testimony of Dr. Matthews regarding the wound. 15 Ala. App. 245, 73 South. 122; 15 Ala. App. 497, 73 South. 992; 62 South. 977; 186 Ala. 5, 65 South. 42. The court erred in admitting to the confessions of the defendant. 179 Ala. 27, 60 South. 908; 202 Ala. 65, 79 South. 459; 204 Ala. 685, 87 South. 183. The court erred in refusing the charges requested by the defendant. 13 Ala. App. 91, 69 South. 345; 16 Ala. App. 396, 78 South. 312; 16 Ala. App. 505, 79 South. 266; 201 Ala. 441, 78 South. 819; 201 Ala. 512, 78 South. 866; 16 Ala. App. 433, 78 South. 463; 78 South. 317.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

SAYRE, J. Defendant (appellant) moved to quash the indictment, and separately each count thereof, on the ground that count 1 did not conclude "against the peace and dignity of the state of Alabama," and that

⊖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

count 2 likewise failed so to conclude, and, further, that count 2 did not commence according to the statute, viz.:

"The grand jury of said county charge that before the finding of this indictment * * *."

[1] The first objection to the indictment is answered by the decisions in McGuire v. State, 37 Ala. 161, and Harrison v. State, 144 Ala. 20, 40 South. 568.

[2] The second would have been removed by the nolle prosequi as to the second count entered by the state (Barnett v. State, 54 Ala. 579), had the order in pursuance thereof been made a part of the record proper in the cause. The order of nolle prosequi should have been shown in the judgment entry. Petty v. Dill, 53 Ala. 641; Ross v. State, 62 Ala. 224; Diggs v. State, 77 Ala. 68; Durrett v. State, 133 Ala. 119, 32 South. 234; 1 Mich. Dig. p. 411, § 518.

[3, 4] The rule—except as to the formal conclusion in respect of which we have noted out decisions supra—is that each count must be sufficient in itself. Harrison v. State, supra. The orderly and full form is to put each count into one paragraph, having a separate commencement (not caption), and, as a rule, any count from which the commencement is omitted is therefore bad. 1 Bishop, Cr. Proc. (2d Ed.) § 429.

[5] However, defendant's objection to the second count, appearing on the face thereof and going to the sufficiency of the formal allegation of the charging authority, was more properly matter for demurrer, and it was in the unrevisable discretion of the trial court to overrule the motion and put the defendant to his demurrer. Johnson v. State, 134 Ala. 54, 32 South. 724.

[6] Defendant and deceased had been neighbors up to the time of the fatal difficulty. Deceased was killed in the road near the house in which defendant lived. Defendant's plea was that he took no part in the killing of deceased, or, in the alternative, that he acted in the excusable defense of his brother, jointly indicted with him. Evidence tended to show that, about dark, defendant or his brother had killed a dog belonging to deceased by shooting him with a gun, and that deceased, hearing the shooting, armed himself and went to the scene. Evidence for the state tended to show that defendant and his brother lay in wait for deceased, and opened fire upon him from opposite sides of the road, inflicting a number of mortal wounds. For the defendant the theory was that deceased started the difficulty by opening fire on defendant's brother. We are unable to say that the trial court erred in excluding evidence—which defendant proposed to elicit from the state's witness Elton Grice on cross-examination—that the dog was vicious. If the fact that deceased's dog was vicious may have tended to show that de-

fendant or his brother were not at fault in shooting the dog, still that fact did not tend to show that they were free from fault in the immediate circumstances of the rencounter which came afterwards, nor did it shed light upon any legal constituent of self-defense. It was too remote. Rogers v. State, 117 Ala. 192, 23 South. 82.

[7] A revolver was found near the body of deceased as it lay in the road. The cartridge in one chamber of the revolver had been discharged. May, a witness for the prosecution, testified that he was familiar with such things, that he had used pistols and shells a good deal, and that the shell in the empty chamber and the barrel of the revolver showed that it had not been discharged recently. The relevancy of this testimony is patent. Further objection was taken on the ground that the witness was not shown to be expert. A witness may have expert knowledge of some of the more ordinary affairs of life (Staples v. Steed, 167 Ala. 241, 52 South. 646, Ann. Cas. 1912A, 480; L. & N. v. Travis, 192 Ala. 453, 68 South. 342), and our opinion is that this witness was qualified to testify as he did.

[8] There was an order of severance, and this defendant was tried alone, but his brothers Searcy and Fair were jointly indicted with him, and the evidence went strongly to show that the killing of deceased was the result of a scheme concerted between them and by them jointly executed. In detail, the evidence went to show that Fair participated in the killing by shooting deceased with a gun, by encouraging his brothers to kill, and that after deceased was prostrate in the road this appellant struck him over the head with the gun which had been fired by Fair, breaking the gun and producing a fracture of the skull of deceased. State's witness Rogers was permitted to testify that after the killing—within 15 to 30 minutes thereafter, as other testimony went to prove —"Fair hid it [the gun] after that when he got to the house with it." The objection was that this testimony was immaterial, illegal, and incompetent. Further testifying, after the ruling just stated and after defendant had duly excepted, this witness said:

"After he got to the house with the gun, it was broke: I don't know if I ever saw the piece of wood before. I seen it was apart. Edgar laid it in the chair, and he picked it up out of the chair. He carried it in the house and laid it on the chair. Fair picked it up, and carried it in the field and hid it under some grass."

This excerpt from the record of the evidence adduced at the trial is made because it sheds light upon the true meaning and effect of the ruling to which defendant's exception was reserved. At the time of the act to which the witness testified the killing was an accomplished fact. But from the

evidence it was possible that the jury find defendant on trial to have been a principal in the second degree—punishable as a principal. Code, § 6219—and that either Searcy or Fair, or both, did the actual killing. In this view of the case, evidence of co-operation being offered, it was proper—necessary in fact—to prove the guilt of either or both codefendants as principals. Self v. State, 6 Baxt. (Tenn.) 244. The evidence in question at this point tended to establish the guilt of codefendant Fair Pynes.

[9] We must assume, there being nothing to the contrary, that the statement of Mr. Lee, who aided the state in its prosecution, was made in good faith. His statement was made in his place as an attorney, was not a statement of fact to the jury, as was the case in the adjudications cited by appellant, but was made in the effort to show the court the relevancy of the fact the state was then offering to prove. In this we find no cause for reversal.

[10] It was not for the witness Searcy Pynes to say that he could not retreat without adding to his danger. He should have been asked to state the facts, leaving the conclusion to the jury.

Other rulings on evidence, involving no questions of novelty or difficulty, need not be stated or argued. We find in them no error.

[11] Several of the charges requested by defendant were properly refused for the reason that they ignored the evidence which tended to show that defendant and his codefendants plotted to kill deceased and assume that the actual killing was done by Searcy alone. Such are charges 14 to 24, both inclusive.

[12] Some of the charges relate to the question of defendant's right to act in defense of his brother as affected by the fact (alleged) that his brother was within the curtilage of his dwelling house. These charges, 13, 24, and D, pretermit all statement of the effect of the evidence from which the jury may have inferred that defendant and his codefendants laid in wait for deceased. If they did lie in wait, they were in no better case than if they had not been within the curtilage. Moreover, the law of this subject was fully stated to the jury in the court's oral charge and in special instructions given at defendant's request.

Charges 6 and 7 were well refused, for the reason that they failed to state the proper legal elements of self-defense.

Other charges need no special consideration.

There was no error.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.