The defendant was indicted and convicted for buying, receiving or concealing stolen property. Sentence was three years' imprisonment.
 I
The defendant contends that the trial judge abused his discretion in allowing into evidence the transcribed testimony of Mrs. Irene LaSollee. The only objection raised to the admission of her testimony is that the State did not exercise due diligence in attempting to make the witness available. InBarber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255
(1968), it was held that "a witness is not `available' for purposes of the foregoing exception to the (right of) confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."
At the time of trial, the witness was a resident of Chicago, Illinois. The assistant district attorney informed the trial judge that the witness refused to come to Alabama to testify.
 "I talked to her husband on the phone, and he indicated she would not be coming. We had made plane reservations and the motel reservations, and that sort of thing. This information was given to me yesterday over the phone in a conversation that I had with Mr. LaSollee."
A subpoena issued for Mrs. LaSollee was "returned not served".
The trial judge noted:
 "The Court has heard, as Mr. Shinbaum (defense counsel) points out, this witness on two prior occasions where she had to come down here from Illinois. And the Court, from what she said before, does judicially know she is out of the state, that she lives out of the state, that she lives out of the state and is permanently and indefinitely out of Alabama. The Court heard Mr. Shinbaum's Cross Examination and will state for the Record that he has made a thorough Cross Examination and had opportunity to Cross Examine and did, in fact, Cross Examine her; that the Court from having heard the Witness twice does not feel like — and this Court has considered this thoroughly — and the Court is convinced from having observed Mrs. Lasollee from when she was here and observing her over all the trials that the Defendant will not in anyway at all be prejudiced in any way directly or indirectly by the State putting in this testimony. So I overrule your objection, and the testimony and the exhibits incident thereto will be admitted, if they were admitted before. Everything excluded will be at that time."
The trial judge could properly take judicial knowledge of the fact that Mrs. LaSollee had testified at a prior trial that she was a resident of another state. Washington v. State, 274 Ala. 386, 148 So.2d 206 (1963).
The prosecutor cited to the trial judge and the defendant relies upon the case of Anderson v. State, 362 So.2d 1296
(Ala.Cr.App. 1978), in which this Court held:
 "Because the prosecution did not utilize the provisions of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings or a writ of habeas corpus ad testificandum or by any other means show that the witness was unavailable to testify, we cannot characterize the State's efforts to produce the witness as having been made with due diligence or in good faith. The mere fact that a witness is incarcerated in another state does not constitute legal `unavailability' for purposes of the introduction of former testimony." Anderson, 362
So.2d at 1302.
The general rule is found in the annotation at 3 A.L.R.4th 87, 220 (1981).
 "The prosecution's failure to utilize the Uniform Act to compel the attendance at the trial of a nonresident witness whose location was known, together with its *Page 1227 failure to attempt to procure the witness's voluntary return, has been held or stated to preclude the admission at the trial of testimony previously given by the witness." (emphasis added)
Here, the State's efforts to procure Mrs. LaSollee's voluntary return were only minimal at best. We would have expected some evidence of the State's attempts to persuade the witness to return after learning of her refusal. However, the sufficiency of the predicate for the introduction of testimony given by a witness at a previous trial is addressed to the trial court's sound discretion. Washington v. State, 274 Ala. 386, 148 So.2d 206 (1963).
Even if we were to hold that the prosecutorial authorities did not make a good-faith effort to obtain Mrs. LaSollee's presence as required under Barber, supra, we cannot ignore the trial judge's finding that "the Defendant will not in anyway at all be prejudiced in any way directly or indirectly by the State putting in this testimony."
By reaching the conclusion that the defendant was not prejudiced by the admission of Mrs. LaSollee's former testimony, we have not relegated our duty in any sense. The record reveals that Mrs. LaSollee testified at two prior proceedings against the defendant. On both occasions her testimony concerned the ownership and identification of the stolen automobile the defendant stands convicted of buying, receiving or concealing. On both occasions the defendant was represented by the same defense counsel — the very same who represented him at the trial now under review. On one of the former proceedings defense counsel thoroughly cross examined Mrs. LaSollee. On the other he declined cross examination. Under these facts we find no reversible error in the admission of the testimony.
 II
At trial, the defendant objected to the admission of a tape recorded conversation between Charles Barnes and Richard Ingle, the son of the defendant. Barnes had participated in the actual theft of the automobile and had sold the stolen vehicle to Richard Ingle. Ingle v. State, 400 So.2d 938 (Ala.Cr.App. 1981). At the time of the conversation, Barnes was working as a police informant. The trial judge admitted the conversation between Barnes and Richard Ingle on authority of C. Gamble,McElroy's Alabama Evidence, Sections 195.03 (5) and (6) (3rd ed. 1977). Those sections provide:
 "(5) Continuing conspiracy to suppress or fabricate evidence
 "If the evidence warrants a finding of accused's participation in a conspiracy to suppress or fabricate evidence of the crime after its commission, an act or statement of a co-conspirator in the accomplishment of this continuing conspiracy is admissible against the accused. [1] "The decisions seem to imply that a destruction or concealment by a co-conspirator, after the crime, of an article connected with the crime is assumed to be within the scope of the conspiracy to commit the crime and, hence, admissible against the accused. [2] Resort to such an assumption, however, is not necessary for the reason that, under the principle of traces, the state is entitled to prove what became of the article with the result that proof may be made of the co-conspirator's concealment of the article and of his statements which both relate to and were made in the course of the concealment. [3]
 "No assumption will be made, in the absence of warranting evidence, that a co-conspirator's attempt after the crime, to silence a witness or induce him to testify falsely, was with the accused's connivance, procurement or approval. [4]
 "(6) Continuing conspiracy to divide the fruits of the crime
 "If it is reasonably inferable from the evidence that the conspiracy embraced the disposition, or the division among the conspirators, of the fruits of the crime, an act or statement of a co-conspirator in furtherance of such disposition or division is admissible against the accused notwithstanding the fact that the statement also referred to an act committed in the execution of the crime.[1]" *Page 1228 
(Footnotes and citations to authority omitted).
The objectionable statement attributed to the son of the defendant is:
 "Richard: Everything. Well just like, look at my ol' man. I mean shit, he'll take somethin' in a minute. You know, he wanted that car and he got cold feet, 'cause it was kind of local, you know.
"101 (Charles Barnes): Uh huh.
 "Richard: But he still wanted it, he still, you know, the old man, he probably still thinks of one, he wants one.
"101: What'd you ever do with that car?
 "Richard: Uh, I pushed it off over yonder. I got his money back out of it. Didn't make nothin' off of it."
The "car" was reference to the stolen automobile which the defendant is charged with buying, receiving or concealing.
The above statements by Richard Ingle obviously constitute nothing more than an admission or narrative statement of past events. They constitute nothing more than a portion of a conversation among thieves discussing crimes they have committed in the past and crimes they are planning or would like to commit in the future. These statements do not relate to and were not made in the course of the concealment of stolen property or in furtherance of any conspiracy. The cases cited as authority in McElroy do not involve a narration of past events. Dailey v. State, 233 Ala. 384, 171 So. 729; Pynes v.State, 207 Ala. 395, 92 So. 663 (1922); Cameron v. State,49 Ala. App. 482, 273 So.2d 242 (1972), cert. denied, 290 Ala. 363,273 So.2d 248 (1973), involve weapons taken from the deceased or used in the crime which witnesses had seen the defendant dispose of or hide.
The rule is stated in 22A C.J.S. Criminal Law, Section 767 (1961):
 "Narrative statements of past events, made after the termination of a conspiracy, are inadmissible against a co-conspirator. Such narratives are rejected as hearsay."
The cases supporting this principle are too numerous to list in this opinion. 22A C.J.S. Criminal Law, Section 767, nn. 18 and 19.
This is merely an application of the general rule that
 "subject to certain exceptions, incriminating, inculpatory, extrajudicial declarations of a co-conspirator made in the absence of or without the knowledge of the accused, after the conspiracy has come to an end through withdrawal or arrest of the participants, or termination of the plan in success or failure, are inadmissible in evidence in a criminal trial to prove the guilt of one other than the declarant." Anno. 4 A.L.R.3d 671, 678 (1965).
The narrative in issue here falls under none of the exceptions to the rule of inadmissibility. Williams v. State,383 So.2d 547 (Ala.Cr.App. 1979), affirmed, 383 So.2d 564 (Ala. 1980);Cox v. State, 367 So.2d 535 (Ala.Cr.App. 1978), cert. denied,367 So.2d 542 (Ala. 1979); 4 A.L.R.3d, Section 14-20.
The objected to comments of Richard Ingle were statements as to past acts and transactions not made in furtherance of any aspect of the conspiracy. Hence, they were patently inadmissible, constituted gross and highly prejudicial hearsay, and their admission is reversible error. Delaney v. State,204 Ala. 685, 87 So. 183 (1920); James v. State, 115 Ala. 83,22 So. 565 (1897); Everage v. State, 113 Ala. 102, 21 So. 404
(1897); Gore v. State, 58 Ala. 391 (1877); Guntharp v. State,54 Ala. App. 363, 308 So.2d 722, cert. quashed, 293 Ala. 756,308 So.2d 728 (1974); Connelly v. State, 30 Ala. App. 91,1 So.2d 606 (1941); Macon v. State, 30 Ala. App. 276, 4 So.2d 439, cert. denied, 241 Ala. 675, 4 So.2d 442 (1941); Morris v.State, 25 Ala. App. 494, 149 So. 359 (1933).
Although the issue was not raised at trial, before the declarations of a co-conspirator are admitted against the defendant, there must be evidence of a conspiracy. Langham v.State, 243 Ala. 564, 11 So.2d 131 (1943). This proof of the existence of the conspiracy must be independent of the statements of the defendant's co-conspirators. United States v.Hodges, 606 F.2d 520 (5th Cir.), cert. denied, 444 U.S. 1035,100 S.Ct. 708, 62 L.Ed.2d 671 (1979); Collins v. State,137 Ala. 50, 34 So. 403 (1903). The *Page 1229 
initial existence of a conspiracy may not be proved by the statements of the co-conspirators. DeBardeleben v. State,16 Ala. App. 367, 77 So. 979, cert. denied, 201 Ala. 523,78 So. 877 (1918).
 III
On cross examination of State's witness Charles Barnes, defense counsel attempted to show Barnes' bias and interest in testifying against the defendant by questioning him about his arrests and whether or not he was a fugitive from justice. The trial judge limited the defense counsel's efforts to showing that Barnes was a fugitive but would not allow inquiry into the specific charges for which Barnes had been arrested but not convicted.
The rule is found in McElroy, Section 149.01 (2):
 "The trial court ordinarily has discretionary power to allow or disallow proof of specific facts which tend to show the witness' bias or the extent thereof. However, where the witness' testimony is importantly adverse to the party against whom he is called, the trial court has very little discretion, if any, to disallow proof of an important fact indicating bias."
Barnes was acting as a police informer after he had been arrested in Jefferson County for murder. Apparently, the fact that Barnes was a fugitive from justice involved this charge. The crime for which Barnes had been arrested was an important factor in showing the degree and extent of his interest and bias. Patton v. State, 197 Ala. 180, 72 So. 401 (1916); Snyderv. State, 145 Ala. 33, 40 So. 978 (1906).
"The bias of a State's witness in favor of the State or against the accused may be shown by evidence of statements, acts, relationships or charges of crime that would reasonably give rise to an inference that the witness is biased." McElroy, Section 149.01 (10). The defendant should have been allowed to show the crime for which Barnes had been arrested under the same principle which allows the interest or bias on the part of a witness to be shown by showing not only that he contributed to a fund for the prosecution of the defendant but the amount contributed as well. Dickey v. State, 15 Ala. App. 135, 140,72 So. 608 (1916). See also Davidson v. State, 19 Ala. App. 77, 78,95 So. 54 (1923) ("The defendant was entitled to know the extent of the witness' interest in the prosecution, as evidenced by the amount of money he was willing to pay towards the prosecution."); Tyson v. State, 29 Ala. App. 220,194 So. 699 (1940); Williams v. State, 21 Ala. App. 227, 107 So. 37
(1926) (Refusal of cross examination as to how much brother of assaulted party paid counsel to assist prosecution held reversible error). Defense counsel had a right to show not only the interest or bias of the witness but the extent of that prejudice. Brogden v. State, 33 Ala. App. 132, 31 So.2d 144, cert. denied, 249 Ala. 348, 31 So.2d 146 (1947); Weaver v.State, 17 Ala. App. 506, 86 So. 179 (1920) (Competent to show that sheriff got $50.00 reward for conviction).
Our review convinces us that the trial judge unduly restricted defendant's cross examination of the prosecution's key witness, and consequently abridged his Sixth Amendment right to confront witnesses, in permitting cross examination only as to the fact that the witness was a fugitive from justice and not to the facts that the witness had been arrested and the particular crimes charged. United States v. Barrentine,591 F.2d 1069, 1081 (5th Cir. 1979).
For the reasons stated, the judgment of the circuit court is reversed and the cause remanded.
REVERSED AND REMANDED.
All Judges concur. *Page 1230