Roy C. Bright, Jr., the appellant, Glen E. Hammett, and John Marcel Olive were jointly indicted for theft of property in the first degree and criminal conspiracy in the *Page 399 
second degree. All three defendants were tried together. Bright was convicted of conspiracy, sentenced to two years' imprisonment, and granted probation. Restitution was ordered in the amount of $15,343. Hammett was convicted of theft. After Olive testified against his co-defendants, the charges against him were dismissed on motion of the State.
 I
Bright argues that, where three alleged conspirators are tried jointly and two are acquitted of conspiracy, the third conspirator must also be acquitted as a matter of law. We disagree.
Alabama Code 1975, § 13A-4-3 (d)(1), states, "It is no defense to a prosecution for criminal conspiracy that: (1) The person, or persons, with whom defendant is alleged to have conspired has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or is immune from prosecution."
The defendant relies upon Berness v. State, 40 Ala. App. 198,201-02, 113 So.2d 178, 180, cert. denied, 269 Ala. 694,113 So.2d 183 (1958). There, the Alabama Court of Appeals stated:
 "The majority rule is that if a nolle prosequi is entered as to one of two persons accused of conspiracy the other must be discharged, since it requires more than one person to commit the crime of conspiracy. 14 Am.Jur.Crim.Law, Sec. 303, p. 970, and cases cited. See also Jones v. State, 16 Ala. App. 477, 79 So. 151.
 "But where the offense charged, though perpetrated by one act, is several as well as joint, a nol. pros. may be allowed as to one or more persons indicted jointly and a trial had on the merits as to the others. Jones v. State, supra."
* * * * * *
 "But even where the offense charged is conspiracy, the general rule seems to be that so long as the disposition of the case against a co-conspirator does not remove the basis for a charge of conspiracy, a single defendant may be prosecuted and convicted of the offense. See citations of authority, in the Annotation `Disposition of Case against Co-Conspirator' 97 A.L.R. 1312."
The Commentary to § 13A-4-3 makes it clear that, to the extentBerness conflicts with that section, the law as stated inBerness is changed:
 "Subdivision (d)(1) is consistent with the general principle which applies to parties to offenses that acquittal or lack of prosecution of the main offender is immaterial in the prosecution of the accessorial offender. E.g., United States v. Provenzano, 334 F.2d 678 (3rd Cir.), cert. denied, 379 U.S. 947
[85 S.Ct. 440, 13 L.Ed.2d 544] (1964) (principal need not be tried, convicted, or even identified). People ex rel. Guido v. Calkins, [9 N.Y.2d 77, 211 N.Y.S.2d 166], 172 N.E.2d 549 (1961). The same principle should apply to coconspirators. It is not essential that two persons be convicted of conspiracy, but only that at least two conspired to commit some unlawful act. Kleihege v. State, 177 N.E. 60 (Ind. 1931). And see New York Penal Law § 20.05 (2); Proposed New Federal Criminal Code § 1004 (4); Proposed Revision Texas Penal Code § 15.02 (c). This may change Alabama law. Hill v. State, 210 Ala. 221, 97 So. 639 (1923) (In prosecution for murder pursuant to conspiracy acquittal of one coconspiractor patently irrelevant.) Cf. Berness v. State, 40 Ala. App. 198, 113 So.2d 178
(1958) (Nolle prosequi of one of two coconspirators requires discharge of other, since conspiracy requires more than one person.)."
See also United States v. Espinosa-Cerpa, 630 F.2d 328 (5th Cir. 1980).
Bright is not due to be discharged and his motion for a judgment of acquittal was properly denied.
 II
Bright is correct in his contention that his conviction was had on the uncorroborated testimony of an accomplice and that the prosecution failed to properly prove the existence of a conspiracy. *Page 400 
The indictment charged in effect that Bright, Hammett, and Olive engaged in a conspiracy to steal or unlawfully obtain from the Baptist Memorial Hospital of Gadsden (hereinafter designated as the Hospital) the silver residue and by-products resulting from the development of x-ray film.
Jerry Baker was the associate director of the Hospital and was, as such, the defendant's supervisor. The defendant was the chief x-ray technologist at the Hospital. Co-defendant Hammett was the chief x-ray technologist at the Boaz-Albertville Hospital and co-defendant Olive was the assistant chief. Hammett and Olive were partners in Independent Silver Reclaimers (ISR) which dealt in the reclamation of silver from old x-ray films and from the process of developing the film.
As chief technologist, the defendant "was responsible for handling whatever arrangements that could be made in disposing of silver flake or old film or whatever." The defendant introduced Hammett to Assistant Director Baker. The Hospital, with the approval of its officers, entered into an agreement with Hammett whereby the Hospital would receive silver bars from ISR in return for the x-ray by-products collected from the Hospital by ISR.
Assistant Director Baker testified that the defendant was responsible for all of the x-ray by-products and the transactions with Hammett. It was the defendant's responsibility to insure that the Hospital received all of the silver it was due from ISR. The defendant and the assistant chief x-ray technologist at the Hospital were the only ones with access to the silver recovery unit of the x-ray developing processor.
Larry Waefler was an auditor for the State Medicaid Quality Control Unit of the Attorney General's Office. He audited the Hospital's records, reviewed the records of ISR, and concluded that the Hospital should have received 2,826.23 troy ounces of silver in addition to what it actually received from ISR. In February of 1983, the Hospital sold Hammett the 2,549 ounces of silver it had amassed during 1981-82 for $40,000. Waefler's review showed that "there were pick ups from Baptist Memorial Hospital that Roy Bodine was ultimately credited with." Waefler testified that the records of ISR showed "a total of 18 transactions with Baptist Memorial Hospital and 14 of them were closely arrayed with documents and transactions with Roy Bodine, either consecutive [receipt] numbers or on the same day with different numbers but reflecting the same day as the transaction." In some cases the transactions "were exactly the same" with regard to the type and amount of silver residue collected by ISR from the Hospital and Bodine.
Waefler testified that a diligent search of public records (tax, social security, public safety) failed to uncover any existence of Roy Bodine. He stated that an expert analysis and comparison of the defendant's handwriting with the signatures of Bodine revealed that Bodine's handwriting was not done by the defendant.
The State's evidence showed that ISR purchased silver from both the Hospital and Bodine and that Hammett handled both accounts.
Larry Lennon was employed by ISR in 1981. He testified that on one occasion he went with Hammett to collect some used x-ray film from the Hospital. Although it was customary to keep "pick-up records" when silver was collected, on this occasion the film was not weighed and the Hospital was not given a receipt. Lennon testified that the defendant told Hammett that they "would get the weights straightened out later."
Jack Thompson operated MIF Refining and acquired ISR in July of 1983. He testified, over objection, that Hammett told him that Hammett had a "special relationship" with Roy Bodine and that if Thompson wanted to maintain that relationship Hammett might possibly handle that. Later, Hammett told Thompson that "Roy Bodine and a Mr. Roy Bright at the Baptist Hospital in Gadsden were one and the same individual." *Page 401 
Mike Alredge worked for MIF but had previously been employed by ISR. In an attempt to obtain new customers for MIF he attempted to locate, but was unable to find, Roy Bodine.
Co-defendant Olive testified as a prosecution witness that when Hammett told the defendant "how good the returns were going to be . . . he [defendant] decided that he wanted part of it." Hammett told Olive that he was going to give the defendant "a split." Hammett and Olive "came up with" the name "Roy Bodine" because they needed records. Olive testified that all the transactions with Bodine involved silver collected from the Hospital. He stated that he did not know who Bodine was, although Hammett had told him that "Roy Bodine and Roy Bright were one and the same people" when the account was set up — when they started doing business with the hospital.
The trial court found that "all" of the evidence "collectively" connects the defendant with the conspiracy: "It is all circumstantial, true, and each piece of it standing by itself probably wouldn't meet the test, but collectively I think that —."
In Alabama, it is well settled that a felony conviction cannot be had on the uncorroborated testimony of an accomplice. Alabama Code 1975, § 12-21-222. It is just as well established that "[b]efore a co-conspirator's statement or act will be admissible against the accused, proof must be made of the conspiracy." C. Gamble, McElroy's Alabama Evidence § 195.03 (2) (3d ed. 1977). Before Hammett's hearsay statement that Bodine and the defendant were the same person was admissible against the defendant, the prosecution had to present prima facie evidence sufficient to establish the existence of a conspiracy.Bynum v. State, 348 So.2d 804, 826 (Ala.Cr.App. 1976), cert. quashed, 348 So.2d 828 (Ala. 1977), cert. denied,454 U.S. 1034, 98 S.Ct. 766, 54 L.Ed.2d 781 (1978); Cox v. State,240 Ala. 368, 370, 199 So. 806, 807 (1941). "Prima facie evidence may be defined as evidence which suffices for proof of a particular fact until the fact is contradicted by other evidence." Lavett v. Lavett, 414 So.2d 907, 911-12 (Ala. 1982).
The existence of the conspiracy must be shown by "evidence independent of the hearsay statements" of the co-conspirator.United States v. Cannington, 729 F.2d 702, 711 (11th Cir. 1984). "And evidence of acts or statements deemed to be relevant may not be given until the judge is satisfied that apart from them there are prima facie grounds for believing in the existence of the conspiracy to which they relate."DeBardeleben v. State, 16 Ala. App. 367, 369, 77 So. 979, 981, cert. denied, 201 Ala. 523, 78 So. 877 (1918). The inference of the conspiracy must be proved by evidence "independent" of the statements of the co-conspirators. Collins v. State, 137 Ala. 50,55, 34 So. 403, 404 (1903). The legal principle for this rule is equivalent to that which states that the testimony of an accomplice cannot be corroborated by the testimony of another accomplice. Ward v. State, 376 So.2d 1112, 1116
(Ala.Cr.App.), cert. denied, 376 So.2d 1117 (Ala. 1979);Knowles v. State, 44 Ala. App. 163, 166, 204 So.2d 506, 510
(1967); Evans v. State, 42 Ala. App. 587, 591, 172 So.2d 796,800 (1965). "The declaration of an alleged conspirator made outside the presence of accused is not, alone and uncorroborated, sufficient prima facie proof of the existence of a conspiracy, or of the connection of the accused with it; nevertheless, the declaration of each and all of the persons accused as to the existence of the conspiracy, taken together with the conduct of the parties and other evidence, may well constitute the most convincing evidence." 22A C.J.S. CriminalLaw § 760 (1961). "This proof of the existence of the conspiracy must be independent of the statements of the defendant's co-conspirators. . . . The initial existence of a conspiracy may not be proved by the statements of the co-conspirators." Ingle v. State, 415 So.2d 1225, 1228-29
(Ala.Cr.App. 1982).
Although the existence of a conspiracy may be and usually is shown through circumstantial evidence, Muller v. State, *Page 402 44 Ala. App. 637, 642, 218 So.2d 698, 703 (1968), cert. denied,283 Ala. 717, 218 So.2d 704 (1969), "`conspiracies cannot be established by a mere suspicion,' and . . . relationships and associations between the parties which are natural and reasonable according to their habits and modes of life do not constitute evidence of a conspiracy." Pharris v. Commonwealth,198 Ky. 51, 55, 248 S.W. 230, 232 (1923).
Here, apart from the hearsay statement of co-defendant Hammett, there was absolutely nothing to connect the defendant with the fictitious Roy Bodine. Without that showing there was no competent testimony to evidence "any confederacy or agreement between" the defendant and Hammett to do an unlawful act. § 13A-4-3 Commentary. By virtue of the defendant's position at the Hospital, some suspicion is created with regard to what involvement, if any, he had in the failure of ISR to pay the Hospital for all the silver it reclaimed. However, it is only conjecture which postulates the existence of a conspiracy between Hammett and the defendant. Such supposition is based only on speculation and does not constitute prima facie evidence of the existence of a conspiracy.
The judgment of the circuit court is reversed and this cause is remanded.
REVERSED AND REMANDED.
All Judges concur.